KING, Appellee,

v.

KING, Appellant.

[Cite as *King v. King* (1992), 78 Ohio App.3d 599.]

Court of Appeals of Ohio,
Warren County.

No. CA91–04–039.

Decided March 9, 1992.

*Leslie S. Landen* and *Mitchell W. Bonham,* for appellee.

*Finkelman, Forshaw, Milbauer & Booher Co., L.P.A.,* and *Karan M. Horan,* for appellant.

KOEHLER, Judge.

Defendant-appellant, Jeffrey A. King, and plaintiff-appellee, Connie S. King, were married on November 7, 1977. The parties had two children, Andrew, born in 1984, and Jennifer, born in 1986.

Appellee filed a complaint for divorce on October 24, 1990, alleging as grounds incompatibility and gross neglect of duty. A hearing was held on February 19, 1991. At that time, the court granted a divorce to both parties on the grounds of incompatibility. The parties stipulated that custody of their children would be granted to appellee. The remaining issues were submitted to the court for determination. A final decree of divorce was entered on April 17, 1991. This appeal followed.

Appellant presents two assignments of error for review. In appellant's first assignment of error, he states that the trial court abused its discretion "by mandating a visitation schedule for appellant." Appellant argues that the court's visitation order is not supported by the evidence and is not in the best interest of the children. We find this assignment of error is not well taken.

■ The trial court has broad discretion in determining matters related to visitation as long as its orders are just and reasonable. The court's primary consideration should be the best interest of the children. R.C. 3109.05[1]; *Appleby v. Appleby* (1986), 24 Ohio St.3d 39, 41, 24 OBR 81, 82–83, 492 N.E.2d 831, 833; *Bodine v. Bodine* (1988), 38 Ohio App.3d 173, 175, 528 N.E.2d 973, 975–976. The trial court's decision will be viewed with deference and will be reversed only upon a showing that the court abused its discretion. *Schoeck v. Schoeck* (June 5, 1989), Preble App. No. CA88–11–022, unreported, at 3, 1989 WL 59034. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

Appellant is a career military officer. As to his future assignments, appellant testified as follows:

"Q. I think the important thing, Captain, is for you to tell the Judge what your immediate plans are for 1991 and the future as far as where you will be stationed, and what you will be planning to do?

"A. Sir, I need to finish two more schools. In the event that the Middle East war goes well for us, I will be permitted to finish those schools. They will end in July, July 18th. I have 30 days leave coming to me, which will take me to August 18th before I depart to a Europe assignment, and right now that's all I have is Europe, tactical Europe.

"Q. You have no plans to go to any other countries in the Far East or anything of that nature?

"A. No, sir, not at all. The only possibility is that if the war does not go well for us, and I will immediately be sent to the Middle East. I have had many classmates already sent over there.

---

1. R.C. 3109.05, along with most other provisions of Ohio domestic relations law, has been amended. Most of the amendments became effective on April 11, 1991. However, since this case was pending prior to that date, the law as it existed before the amendment is applicable. See R.C. 1.58; *Woodward v. Eberly* (1958), 167 Ohio St. 177, 4 O.O.2d 223, 147 N.E.2d 255, paragraph one of the syllabus. Therefore, in this opinion we refer to the former version of the law.

"Q. So, your plans are—what will you be—how long an assignment, do you know, that you will be in Europe?

"A. Sir, presently the assignment is set to seven years. It's because of the Middle East war and the budget restrictions of Gramm–Rudmann that they have made necessary assignments up to seven years, and that's what everybody is looking at.

"Q. If everything would go right, then that would be your intention to stay in Europe for seven years?

"A. Yes, sir."

 In regard to visitation, the trial court ordered that appellant "be afforded two three-week sessions of visitation during the summer. However, the court believes the children need to be returned to their mother in between the two sessions for a minimum of one week because of their young ages." Appellant contends that the court was aware he was due to be stationed in Europe for the next several years. Appellant argues that there was no evidence to show that the children needed to be returned to their mother between visits and that requiring the children to make four transatlantic flights instead of two is not in their best interest.

If appellant's plans to go to Europe were definite, we would most likely agree that the trial court abused its discretion in making the visitation order. However, the record shows that at the time of the hearing, appellant's plans were uncertain. He was then stationed in the United States and planned to be in the United States until at least August 1991. The record also shows that the parties were frequently separated during the marriage because of appellant's military assignments and that the children lived with appellee during these separations. Accordingly, the trial court concluded that these young children should not be separated very long from the custodial parent with whom they lived for their entire lives. Under the circumstances, we cannot conclude that the trial court's order regarding visitation was so arbitrary, unreasonable or unconscionable as to constitute an abuse of discretion. Further, should appellant eventually be stationed in Europe, he always has the option of filing a motion to modify visitation. See *Appleby, supra,* 24 Ohio St.3d at 40, 24 OBR at 81–82, 492 N.E.2d at 832–833. Accordingly, appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that the trial court erred in dividing the parties' property. Appellant presents three separate arguments as to why the trial court's division of property is inequitable. We conclude that appellant's argument in regard to the trial court's decision to

reserve jurisdiction over appellant's retirement plan has merit and we therefore find this assignment of error to be well taken.

We begin by noting that in domestic relations cases, the trial court may award alimony as it considers reasonable to either party. R.C. 3105.18. "In Ohio, alimony is comprised of two components: a division of marital assets and liabilities, and periodic payments for sustenance and support." *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 95, 518 N.E.2d 1197, 1200; *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 352, 20 O.O.3d 318, 320–321, 421 N.E.2d 1293, 1296. The trial court has broad discretion to determine what property division is equitable in a divorce proceeding. The mere fact that the property division is unequal, does not, standing alone, amount to an abuse of discretion. *Cherry, supra,* paragraph two of the syllabus. The decision of the trial court regarding property division will not be reversed on appeal absent an abuse of discretion. *Blakemore, supra,* 5 Ohio St.3d at 217–218, 5 OBR at 481–482, 450 N.E.2d at 1140–1141.

Appellant argues that the trial court improperly awarded to appellee appellant's separate nonmarital property acquired through an inheritance from his mother. Appellant also argues that the trial court failed to consider separate nonmarital funds he used to settle his mother's estate. R.C. 3105.-18(B)(10) provides that one of the factors to be considered in determining the property division is "the property brought to the marriage by either party." As a general rule, property acquired by gift, bequest, devise, or descent is considered to be a nonmarital asset. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 413, 75 O.O.2d 474, 481–482, 350 N.E.2d 413, 423 fn. 27; *Kuehn v. Kuehn* (1988), 55 Ohio App.3d 245, 246, 564 N.E.2d 97, 99. However, the fact that certain property was brought to the marriage by one party is not necessarily determinative of the disposition of that property. *Sanzenbacher v. Sanzenbacher* (1981), 3 Ohio App.3d 180, 181, 3 OBR 206, 206–207, 444 N.E.2d 454, 454–455; *Ammon v. Ammon* (Mar. 6, 1989), Clermont App. No. CA88–03023, unreported, at 8, 1989 WL 18871. Nonmarital property may lose its nonmarital character when it is commingled with or transmuted into marital property. *Kuehn, supra,* 55 Ohio App.3d at 246, 564 N.E.2d at 99; *Sword v. Sword* (Aug. 12, 1991), Madison App. No. CA91–01–004, unreported, at 4, 1991 WL 153197.

The record shows that the parties agreed that the marital residence had been appraised at a value of $62,000. The house had originally been owned by appellant's mother. Appellant and his brother inherited the house upon their mother's death. The value of the house at the time of the estate proceedings was $32,000. At the time the parties were married, appellant's brother owned a one-half interest in the residence. Initially, appellant had made an agreement to pay his brother $15,000 for his share of the home.

Appellant agreed to pay his brother such a large sum to help his brother finance his own home. However, appellant could not pay his brother $15,000 within the time frame upon which they had agreed. Eventually, the parties paid appellant's brother approximately $8,000 from the parties' joint bank account. Appellant contributed $250 per week to this account and appellee contributed $50 per week.

Appellant argues that the trial court should have given him credit for the $8,000 paid to his brother and for various expenses appellant paid toward his mother's estate. We disagree. In addition to the $8,000 paid to his brother, appellant paid approximately $2,800 in funeral expenses by selling a car he had previously bought for his mother. The trial court determined that the value of the marital residence at the time of the inheritance was $32,000. There was an outstanding mortgage in the amount of $19,500 that was paid by both parties. Accordingly, the trial court concluded that the equity in the property at the time of the inheritance was $12,500. From that value, the court subtracted the $8,000 paid by both parties jointly to appellant's brother, leaving a value of $4,500, the amount the trial court deemed to be nonmarital.

It is clear from the record that both parties contributed to the payment made to appellant's brother and therefore that portion of the value of the property was transmuted into marital property. Under the circumstances, we cannot conclude that the trial court's decision to award appellant only $4,500 as separate property was so unreasonable, arbitrary or unconscionable as to constitute an abuse of discretion. Appellant is seemingly arguing that his use of his separate funds to pay his separate debt should somehow change the character of the marital property. This argument is clearly erroneous. Accordingly, we conclude that the trial court did not err by awarding appellant $4,500 as the value of his separate marital property.

Appellant also argues that the trial court erred in reserving jurisdiction over appellant's retirement plan in which he is not yet vested. We agree.

Appellant testified that he is not entitled to participate in his retirement plan with the United States Army until he has completed twenty years of active duty. At the time of trial, appellant had completed eleven years of active duty. The court reserved jurisdiction over appellant's potential retirement benefits. Appellee was awarded one half of all appellant's retirement benefits earned during the marriage should appellant complete his military career. The court concluded that if appellant never becomes vested in his retirement plan pursuant to Army regulations, then "no such division will be made."

██ We would first note that we reject appellant's claim that appellee is not entitled to any part of his retirement under the Former Spouse's Protection Act, Section 1408, Title 10, U.S.Code, because the parties were married less

than ten years. The Former Spouse's Protection Act was enacted in response to a United States Supreme Court decision which held that military retirement benefits were the sole property of the spouse who had been in the service. *Mansell v. Mansell* (1989), 490 U.S. 581, 584–585, 109 S.Ct. 2023, 2026, 104 L.Ed.2d 675, 682–683; *Bates v. Bates* (July 9, 1990), Butler App. No. CA89-10–148, unreported, at 3, 1990 WL 94243. Section 1408(c)(1), Title 10, U.S.Code permits state courts to treat military pensions "either as property solely of the member or as property of the member and his spouse" in accordance with state law. Accordingly, the trial court may include military retirement benefits as a factor to be considered in determining a property division, pursuant to R.C. 3105.18. *Bates, supra,* at 4.

■ Appellant relies on Section 1408(d), which requires the parties to be married for ten years during the active service of the member. However, this section creates a mechanism whereby the federal government will make direct payments to the former spouse. *Mansell, supra,* 490 U.S. at 584–585, 109 S.Ct. at 2026, 104 L.Ed.2d at 682–683. This section only bars direct payments to the former spouse when the marriage is less than ten years' duration; it does not prevent a state court from dividing the retirement benefit as a marital asset. *LeVine v. Spickelmier* (1985), 109 Idaho 341, 707 P.2d 452; *Warren v. Warren* (Ind.App.1990), 563 N.E.2d 633; *Oxelgren v. Oxelgren* (Tex.App.1984), 670 S.W.2d 411.

■ Nevertheless, we agree with appellant when he argues that the trial court abused its discretion by reserving jurisdiction to divide his retirement benefits. A vested pension plan accumulated during a marriage is a marital asset and must be considered in conjunction with the factors listed under R.C. 3105.18 and other relevant factors in dividing marital assets and liabilities to ensure an equitable result. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 541 N.E.2d 597, syllabus. "The trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292, paragraph two of the syllabus. "In a situation involving vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured." *Id.* at 182, 559 N.E.2d at 1297.

■ The record shows that appellant still had nine years to serve in the military before he would become vested. There was no testimony as to the value of his retirement plan at the time of the hearing. The cases we have found discussing the issue of retirement benefits all involve situations where the individual was vested in his or her retirement plan, probably because the

value of a plan in which an individual is not vested will seldom be an issue due to its limited value. In the present case, it is unknown whether appellant will remain in the military and become vested in his pension plan. The trial court's division of appellant's possible military pension would provide little or no incentive to appellant to remain in service. Appellant's unvested interest in the plan is not even subject to a qualified domestic relations order. We conclude that appellant's interest in the plan is far too speculative to justify the court's failure to "disassociate the parties from one another or * * * minimize their economic partnership." *Id.* This is not a case where the employed spouse's pension or retirement benefit was the only marital asset of the parties. Nor is it a case where the court, by reserving jurisdiction, could maintain "the optimum value [of] the pension or retirement benefit * * * to the parties as a couple." *Id.* at 183, 559 N.E.2d at 1298. Therefore, we hold that it was unreasonable for the trial court to reserve jurisdiction to divide pension benefits that may or may not be available in nine years and that the trial court abused its discretion.

Appellant also argues that the trial court failed to make a division of all the parties' assets. Appellant argues that the trial court failed to assign ownership of a 1964 Volkswagen automobile. The record shows that at the time of the hearing, the automobile was seventeen years old and was not considered a classic or antique. Appellant did not raise the issue in the trial court and it is clear that the automobile's value is minimal. Under the circumstances, we cannot conclude that the trial court abused its discretion in failing to award the Volkswagen to either party. However, since we have concluded that the trial court abused its discretion in regard to appellant's retirement benefits and that the case must be remanded for reconsideration in light of that issue, we also remand the case for the court to award the vehicle to one of the parties.

In sum, we conclude that the trial court abused its discretion in awarding appellee one half of appellant's potential retirement benefits and by reserving jurisdiction over appellant's retirement plan. We remand the case to the trial court for reconsideration of the property division in light of this decision. Accordingly, appellant's second assignment of error is sustained.

The judgment is affirmed in part and reversed in part, and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

JONES, P.J., and WALSH, J., concur.