This is a consolidated appeal from the March 9, 1998 and August 21, 1998 judgments of the Williams County Court of Common Pleas, which stem from the October 22, 1997 judgment granting appellee-plaintiff Laura Sullivan and appellant-defendant Wesley Sullivan a divorce. The procedural history of this case was previously set forth by this court inSullivan v. Sullivan (May 28, 1998), Williams App. No. WM-98-009, unreported, and is incorporated herein. Pursuant to the May 28, 1998 order of this court, appellant's appeal filed April 8, 1998, was dismissed[1] and his appeal filed March 19, 1998, was held in abeyance pending the trial court's determination of appellant's objections to the magistrate's October 7, 1997 decision.
On remand, the trial court ordered the parties to submit proposed findings of fact and conclusions of law by July 24, 1998. Thereafter, on August 21, 1998, the court adopted, in its entirety, the proposed findings of fact and conclusions of law of the appellee. On September 4, 1998, appellant filed a notice of appeal as to the trial court's August 21, 1998 judgment. This court consolidated the appeals on September 30, 1998. From the above judgments, defendant-appellant raises the following assignments of error:
 "1. The trial court erred in admitting the testimony of Dianne Winners over Defendant's objections.
 "2. The trial court erred in that the Magistrate's valuation of the residence was against the manifest weight of the evidence.
 "3. The trial court erred in the share of the marital home awarded to Wesley Sullivan.
 "4. The trial court erred in its determination of the Defendant's pre-marital assets and in making an appropriate set off for said assets.
 "5. The trial court erred in the division of the R.J. O'Brien account.
 "6. The trial court erred when it failed to grant the Defendant a continuance to obtain a new counsel.
 "7. The Magistrate erred when she refused to admit the Defendant's exhibit 7 for impeachment purposes (said exhibit was proffered and attached to the record)."
Appellant and appellee were married on May 12, 1990. Three children were born of the marriage: Stacie, born September 6, 1991; and twins Amy and Emily Sullivan born November 25, 1992. At the time of the proceedings below, appellee was thirty-six years old and appellant was thirty-four years old. Appellee is a licensed practical nurse ("LPN") and was working part-time at Hillside Country Living in Bryan, Ohio. Appellant is a high school graduate and was employed at Sauder Woodworking Company in Archbold, Ohio for approximately two years. Prior to his employment at Sauder, Mr. Sullivan was continuously employed at various machining and truck servicing positions. Beginning in 1991, appellant was also involved in farming operations. The farming operations ceased in late 1995.
Prior to the trial court's October 22, 1997 judgment decree, hearings were held before a magistrate on June 18, 1996, August 14, 1996, September 18, 1996 and October 30, 1996. Prior to the hearings the parties stipulated to child custody and support issues. The hearings were conducted to determine the value and distribution of real and personal property. The following facts were adduced over the course of the hearings.
The marital residence, located in Bryan, Ohio, and built around 1900, was purchased by appellee in January 1985, for $42,500. Appellee paid $9,500 as a down payment and, thereafter, paid approximately $150 bi-weekly by automatic deduction from her bank account. The parties stipulated that the value of the home on the date of their marriage (May 12, 1990) was $52,000, and that $23,962.95 was owed on the mortgage. On May 7, 1991, appellee paid $18,421.80 on the mortgage from a pre-marital CD. Marital funds in the amount of $4,969.89 were applied to the mortgage. On March 20, 1992, the mortgage was paid in full with a $571.76 payment from appellee's pre-marital funds.
During the marriage, several improvements/maintenance items were done to the residence. These include: a replacement well, $3,000; metal front door, $327.89; new roof, $6,311; chain link fence, $780; septic tank, $685; bathroom shower door and surround, $400; wood deck, $1,700; wood paneling in bedrooms, carpet in bedroom and entryway, paint and closets built in the children's bedroom, $2,600; driveway stone, $152.70; and switches and outlets in the barn, $200.
Appellee hired Barbara Marihugh, a professional real estate appraiser, to appraise the marital residence. Her qualifications as a state certified appraiser are undisputed. Marihugh testified that there are essentially three methods used to appraise real property. The comparison approach takes homes with similar square footage, age, parcel size and overall condition. Under this approach the effective age, or the age the home looks like, is very important. The effective age is based upon the amount of updating or improvements which have occurred in the home. The comparison approach is often used in older homes. A second method is the cost approach. This is best used in new homes with little depreciation. Finally, the third method is the income approach which is mainly used for rental properties.
Marihugh testified that she typically uses the comparison approach and, in her appraisal of the subject property, she used five comparables.
Marihugh also testified as to the impact of the improvements/maintenance in relation to the value of the property. She testified that regular maintenance did not typically increase the value of the property, while home improvements may. She testified that the well, front door, new roof, septic tank, fence, driveway stone, and wiring in the barn were all maintenance items that were not value effective. She further found that the wood deck, shower door and surround and improvements to the bedrooms were cost effective.
Marihugh conducted the home inspection on September 28, 1995. In her report issued October 7, 1995, she appraised the marital residence at $70,000.
Appellee next called Dianne Winners, a state licensed appraiser to testify. Winners conducted her appraisal at appellant's request. Appellant's counsel objected to Winners' testimony arguing that Winners was originally appellant's witness and since appellant had chosen not to call her as a witness, she should not be allowed to testify. Appellant's counsel further argued that the appraisal constituted attorney work product. The trial court rejected such arguments and Winners testified over objection.
Winners testified that she used the sales comparison approach in arriving at a value of the home. She used five comparables and her appraisal, dated January 4, 1996, valued the home at $78,000.
Appellant also had the home appraised by Pamela Towne, a licensed realtor and apprentice appraiser. Appellee's counsel objected to her testimony, questioning her expert witness qualifications. The magistrate overruled the objection. Towne testified that she reviewed the property under all three appraisal methods: comparison, cost and income, but that the comparison approach weighed most heavily in the valuation. She also stated that all her appraisals are reviewed by Eric Stotz, a certified appraiser. Her October 26, 1995 appraisal valued the property at $95,500.
During the course of the hearings, there was extensive testimony and numerous exhibits admitted as to the parties' pre-marital assets. The parties stipulated that with regard to appellant he would retain a 1973 truck, a 1982 Suzuki motorcycle, and a 1968 Chevy truck. Appellee was to retain her interest in PERS of approximately $5,000, a First Federal IRA, a Tennessee Walker horse, and a 1981 Camaro. Appellee was to also retain the 1993 Plymouth mini-van which the parties paid for, in part, with a $4,620 trade-in from appellee's pre-marital vehicle which she owned free of debt. On the date of the hearing, approximately $8,500 was still owed on the van. The dispute centered around the set-off of the parties' pre-marital assets and the distribution of the marital assets.
Appellee testified that just prior to her marriage she had a balance of $20,325.97 in her First Federal Savings and Loan checking account. On May 7, 1991, she made a payment of $18,421.80 on the home with proceeds from a pre-marital CD. On the date the account was closed it had a balance of $29.
Appellant testified that at the time of the parties' marriage, he had a balance of $2,527.34 in a bank account at Farmers Merchants State Bank. After the parties married, appellee maintained a joint checking account at First Federal which she primarily used, and appellant had joint checking and savings accounts at Farmers Merchants where he did business. Appellant also sold a truck and trailer which he owned free of debt, shortly after the parties married, for $5,800. Approximately $2,000 was placed in the farming account and $4,000 in the joint checking account. Much of this money was transferred to the farming account to pay for equipment and machinery, including the money in appellant's pre-marital account. Approximately $8,000 in farm equipment and machinery was purchased from the farm account. The balance of the Farmers Merchants farming account was $1,079. When appellant closed the checking account there was a balance of $725. There was also a savings account in which funds from the R.J. O'Brien stock account, as well as deposits from the corn and bean contracts, were deposited ("R.J. O'Brien account"). The total balance in the R.J. O'Brien account, on November 11, 1995, was $16,390.56. Thereafter, appellant made withdrawals from the R.J. O'Brien account for living expenses, doctor and dentist bills and Christmas gifts. On February 29, 1996, the balance was reduced to $14,500. Appellant was also in receipt of the parties' 1995 Federal Income tax refund, $756.34, which he cashed.
The trial court, on August 21, 1998, adopted in its entirety the appellee's proposed findings of fact and conclusions of law which, pursuant to court order, were filed on July 24, 1998. The valuation of the marital residence was determined to be $78,000, or the middle appraisal value. Appellant's equity in the home was set at $3,900 plus $2,253.78 (one-half of marital funds spent on improvements) for a total of $6,153.78.
The set-off from pre-marital funds was determined as follows. Appellant was credited with $2,527.34 from a pre-marital bank account. He also had a semi-tractor which he sold after marriage for $5,880. Thus, his total set-off was $8,327.34. Appellant received $9,814 in marital assets and, with the set-off, had a total of $1,486.66 in marital assets.
Appellee was credited with $3,842.18 in pre-marital funds, and her marital assets were calculated at $79. The court determined that appellant, to equalize the property distribution, was to pay appellee $703.83, or the total amount of marital assets, divided in half, and reduced by $79.
Further, while not addressed in the trial court's August 21, 1998 judgment entry, appellant was ordered in the October 7, 1997 magistrate's decision, to equally divide the funds from the R.J. O'Brien account which, as of the date the complaint for divorce was filed totaled $16,390.56, (one-half = $8,195.28) and was then in appellant's possession.
In his first assignment of error, appellant asserts that the trial court erred in admitting the testimony of Dianne Winners. Winners was originally retained as an expert witness for appellant who then determined he did not wish to have her testify during the hearing. Appellee, on the other hand, had Winners testify on direct examination. Her testimony was based upon her appraisal of the marital residence which she valued at $78,000. Appellant objected to such testimony claiming that since appellant hired Winners, any testimony was protected by attorney work product and not discoverable. The trial court overruled the objection.
Decisions regarding the admission of evidence are generally a matter within the sound discretion of the trial court.Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299. Such decision may be reversed only upon a showing of an abuse of discretion. Id. An abuse of discretion has been defined to connote more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Tracy v. Merrell-Dow Pharmaceuticals, Inc. (1991),58 Ohio St.3d 147, 152.
The "work product" doctrine is set forth in Civ.R. 26(B)(3) and states in relevant part:
 "Subject to the provisions of subdivision (B)(4) of this rule, a party may obtain discovery of documents and tangible things pre pared in anticipation of litigation or for trial * * * only upon a showing of good cause * * *."
Subsection (B)(4)(b) provides in part:
 "* * * [A] party by means of interrogatories may require any other party (i) to identify each person whom the other party expects to call as an expert witness at trial, and (ii) to state the subject matter on which the expert is expected to testify. Thereafter, any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject matter. Discovery of the expert's opinions and the grounds therefor is restricted to those previously given to the other party or those to be given on direct examination at trial."
In the instant case, the record reveals that Winners conducted the appraisal while both parties were present. Further, both appellant and appellee answered questions regarding the condition of the property which helped in forming the basis of her appraisal. Finally, the appraisal information was readily available to appellee. Given the foregoing, we cannot say that the magistrate abused her discretion in allowing Dianne Winners' testimony. The first assignment of error is therefore not well-taken.
Appellant, in his second assignment of error, claims that the magistrate's valuation of the marital residence was against the manifest weight of the evidence. Appellant argues that the magistrate should have averaged or taken the mean of the three appraisals which valued the residence at $70,000, $78,000 and $95,500. He further argues that Towne, appellant's expert, was just, if not more, qualified than the two appraisers because she, as a realtor, had sold over two million dollars in real estate the preceding year.
The trial court is vested with broad discretion in the equitable division of martial property. King v. King (1992),78 Ohio App.3d 599, 604. "Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances."Baker v. Baker (1992), 83 Ohio App.3d 700, 702, citingBriganti v. Briganti (1984), 9 Ohio St.3d 220, 221-222. Thus, while averaging may be an acceptable method of valuation, equity may require alternative methods.
In the instant case, the magistrate found that the marital residence had a fair market value of $78,000. A review of the transcript reveals that appellee offered testimony and evidence tending to support the magistrate's valuation. While appellant offered testimony to the contrary, it is for the trier of fact to determine the credibility of witness testimony and it is improper for this court to overturn a finding on that basis. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81.
Accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant argues that the trial court's allocation of the marital residence, was in error. Specifically, appellant disputes the marital residence valuation date as well as the trial court's determination of appellant's equity in the residence.
R.C. 3105.171(G) provides that when dividing and distributing property, a trial court shall make written findings of fact in support of that determination and shall specify the dates used in determining the meaning of "`during the marriage.'" A court may select dates it considers equitable in determining martial property. R.C. 3105.171(A)(2)(b). As to the date of valuation, a trial court is vested with discretion in applying a date other than the actual date of the divorce. Neel v. Neel
(1996), 113 Ohio App.3d 24, 33, citing Gullia v. Gullia (1994),93 Ohio App.3d 653, 666.
In the case sub judice, the magistrate's September 9, 1997 decision set forth that Dianne Winners was the last expert to conduct an appraisal on the home, on January 4, 1996. This was the date the magistrate used in determining the valuation of the marital residence. Thus, the trial court substantially complied with the requirements under R.C. 3105.171.
Appellant next disputes the formula used to determine appellant's share of equity in the marital residence. Appellant's equity in the residence was determined as follows:
"1990
 Fair market value $52,000.00 Mortgage debt at time of marriage $23,962.95 Plaintiff's equity $28,037.05
 1997
 Fair market value $78,000.00 Mortgage debt $-0- Plaintiff's pre-marital funds applied to mortgage after marriage $18,993.56 Marital funds applied to mortgage $4,969.39
* * * * *
 Separate investment of wife ($28,037.05 + $18,993.56) = $47,030.61 Marital investment = $4,969.39
Total Investment = $52,000.00
* * * * *
 Plaintiff's % of investment = $47,030.61
$52,000.00 = 90% Marital % of investment = $4,969.39
Total investment = $52,000.00 = 10% 10% of the total present equity = $7,800.00 Defendant's 1/2 = $3,900.00"
The court further determined that only $4,507.57 of the purported $15,000 spent on improvements/maintenance enhanced the value of the marital residence. This determination was based upon the testimony of Barbara Marihugh, appellee's appraiser. The court therefore granted appellant $2,253.78, or one-half of the value of the improvements, for a total of $6,153.78.
Appellant specifically objects to the magistrate's determination that the appreciation in the residence was "passive" appreciation and, as such, divided based upon the parties' financial contributions to the purchase price. R.C.3105.171(A)(6)(a)(iii) includes within the definition of "separate property": "Passive income and appreciation acquired from separate property by one spouse during the marriage."
As set forth above, the trial court determined that of the approximately $15,000 expended for improvements/maintenance, only $4,507.57 enhanced the value of the marital residence. Appellant has provided no evidence to refute such a finding. We further find that the trial court's calculations relating to the parties' relative financial contributions are accurate. Accordingly, appellant's third assignment of error is not well-taken.
Appellant's fourth and fifth assignments of error address the trial court's determination of the parties' set-off for pre-marital assets. The crux of appellant's assignments of error is that he should have received a larger share of the R.J. O'Brien account, which the court determined was marital property and divided equally. Appellant bases his contention on the argument that he used pre-marital funds to begin the farming operation, and appellee did not contribute any money, labor or equipment to the farming operations.
When either party makes a contribution, whether it be monetary, labor, or in-kind, which increases the value of separate property, the increase in value is deemed marital property.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 399. R.C.3105.171(C)(2) provides that "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of martial property." The party seeking to have certain property labeled separate, bears the burden of proof, by a preponderance of the evidence. Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
In the instant case, the parties do not dispute that appellant acquired farm machinery with pre-marital funds. Appellant was credited with $5,880 in proceeds from the post-marriage sale of his semi truck, which he purchased prior to marriage. He was also entitled to set off $2,527.34 of pre-marital funds. However, the funds in the R.J. O'Brien account are, in large part, profits from the bean and corn contracts. Such profits were derived from labor which appellant expended during the marriage. R.C. 3105.171(A)(3)(a)(iii) clearly and unambiguously provides that when either party makes a labor contribution which causes an increase in the value of the property, such increase is marital property. Middendorf, supra. Therefore, since appellant has failed to prove, by a preponderance of the evidence, that the farming proceeds be labeled separate property, the trial court did not abuse its discretion in the equal division of the R.J. O'Brien account. The court further finds no abuse of discretion as to the set-off for the parties pre-marital assets. Accordingly, appellant's fourth and fifth assignments of error are not well-taken.
Appellant's sixth assignment of error asserts that the trial court erred when it failed to grant him a continuance to obtain new counsel. Appellant's counsel withdrew from the case after the magistrate issued her October 7, 1997 amended report, and before appellant set forth his objections in his October 22, 1997 letter. This court finds that appellant has suffered no prejudice, nor has he demonstrated that the trial court abused its discretion, because the objections were addressed below and are now before this court. Accordingly, appellant's sixth assignment of error is not well-taken.
Finally, in his seventh assignment of error, appellant argues that the magistrate erred when she refused to admit evidence proffered by appellant. Such evidence was a bundle of canceled checks, "Defendant's Exhibit 7," supposedly written by appellant and drawn on his Farmers Merchants account. Appellant states that he sought to introduce the checks in order to impeach appellee's testimony that she had been paying all house hold bills.
The magistrate articulated the following reasons for not admitting the bundle of checks:
 "* * * I am not going to admit them because I think they could be misleading to me in that I don't know, I don't have testimony on each check. I would acknowledge the testimony that he paid on debts and that there are various checks that are admitted and bills that are admitted that he has paid on. I have the testimony. But as far as all the checks out of these people's joint accounts, I don't know why I would go through and see how many he signed and how many she signed. I don't know who is putting the money in the account. I don't know for what purpose other than to prove he paid on debts and I've got testimony to that effect."
Again, decisions regarding the admission of evidence are, generally left to the sound discretion of the trial court. Petersv. Ohio State Lottery Comm., 63 Ohio St.3d at 299. Such decision is upheld absent a showing of an abuse of discretion. Id. After consideration of the proceedings below, this court cannot say that the magistrate abused her discretion by refusing to admit appellant's Exhibit 7. Therefore, appellant's seventh assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
James R. Sherck, J.
 Richard W. Knepper, J.
 Mark L. Pietrykowski, J.
CONCUR.
[1] The April 8, 1998 appeal, appeal no. WM-98-012, contested the trial court's October 22, 1997 judgment granting the parties' divorce, awarded appellee custody of the parties' three children and ordered appellant to pay child support and divided the parties marital assets.