Defendant-appellant, Karen Buchanan, appeals a divorce decree of the Clermont County Court of Common Pleas, Domestic Relations Division, which granted plaintiff-appellee, Michael Buchanan, legal custody of their minor child, and divided the assets and liabilities of the parties. We affirm.
The parties were married on May 12, 1989 and had one child, Joanna Buchanan, born February 7, 1994. Appellee filed for divorce on October 11, 1996. A trial was held on October 14-16, 1997. The trial court issued its divorce decree on May 29, 1998. Findings of fact were entered on July 2, 1998.
Appellant sets forth the following assignments of error:
Assignment of Error No. 1:
 THE DECISION OF THE TRIAL COURT TO GRANT CUSTODY TO APPELLEE AND ORDER SUPERVISED VISITATION BETWEEN THE MINOR CHILD AND APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONSTITUTES AN ABUSE OF DISCRETION.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND ABUSED ITS DISCRETION IN THE DIVISION OF THE MARITAL PROPERTY AND DEBTS.
In her first assignment of error, appellant contends that the trial court erred in awarding appellee custody of the minor child and requiring that appellant's visitation be supervised. The trial court is vested with broad discretion to decide matters relating to the allocation of parental rights and responsibilities for the care of minor children and its decision is subject to reversal only upon a showing of an abuse of that discretion. Masters v. Masters (1994), 69 Ohio St.3d 83,85. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When making an allocation of parental rights, the trial court must consider the child's best interest. R.C. 3109.04(B)(1). In determining the best interest of the child, the trial court is obligated to consider all relevant factors including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
(b) * * * [T]he child's wishes;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all the persons involved in the situation;
 (f) The parent [who is] more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all [required] child support payments;
 (h) * * * Whether either parent has been convicted of or pleaded guilty to a [domestic violence] offense.
 (i) Whether the residential parent has continuously and willfully denied the other parent * * * visitation * * *;
 (j) Whether either parent has established a residence or is planning to establish a residence outside the state.
The trial court heard evidence raising concerns regarding both parents. Appellant had been Joanna's primary caretaker. However, appellee was Joanna's caretaker during times when he was unemployed and appellant was employed cleaning houses. Both parties admitted to smoking marijuana on a daily basis during the marriage. Appellee testified that appellant often locked herself in the bathroom in order to avoid caring for Joanna.
In September 1996, Joanna received a bruise on her thigh, apparently from a spanking by appellant. Although the Clermont County Child Protective Services did not find substantiated abuse and the police did not prosecute, a magistrate, in an order entered October 3, 1996, found that appellant had committed domestic violence. Appellee was granted temporary custody of Joanna and appellant's visitation was ordered supervised.
Dr. Charles Handel, a court-appointed psychologist, reported that during a February 1997 examination, appellant presented herself as an immature and stress-ridden individual with strong dependency needs, anxiety, and depression. Dr. Handel further stated that impulsivity and an immature neediness dictated her responses to unexpected situations. Dr. Handel found that although there was "no substantiated abuse by [appellant] of her daughter" according to available records, her psychological profile suggested she could become "easily overwhelmed by circumstances, which could lead to her losing her composure." Dr. Handel noted that appellee had been doing an adequate job of meeting Joanna's physical needs. Dr. Handel stated that appellee's immaturity and guardedness was a concern and that appellee's problems with intimate relationships[1] would make parenting of his daughter more difficult when she was older. However, Dr. Handel found it would be least disruptive for Joanna to continue in placement with appellee. Dr. Handel recommended a gradual decrease in the supervision of appellant's visitation. A child custody evaluator also recommended, albeit with hesitation, that appellee be designated the custodial parent.
The trial court heard evidence that appellee had completed a parenting course very successfully and that he had sought counseling to eliminate his drug dependency in order to become a better parent. Appellant testified that taking Valium and smoking marijuana did not affect her ability to parent, but that she had stopped because she was "tired of being badgered about it." Appellant testified that she was working full time since the separation and attending counseling sessions to work on her depression and low self-esteem. The court found that both parties were drug free at the time of trial.
The trial court was faced with difficult decisions in this case and we find no abuse of discretion. Dr. Handel and the custody evaluator had recommended that custody remain with appellee, and there was little evidence presented to contravene that recommendation. Although appellant had made some progress in dealing with the psychological issues noted in Dr. Handel's report, the trial court did not err by cautiously continuing the supervision of her visitation. Therefore, appellant's first assignment of error is overruled.
In her second assignment of error, appellant alleges that it was against the manifest weight of the evidence for the trial court to find that certain sums advanced from appellant's mother to the parties were gifts and not loans. The trial court is vested with broad discretion in establishing an equitable division of marital property. King v. King (1992), 78 Ohio App.3d 599,604. In reviewing the trial court's decision, a judgment which is supported by some competent, credible evidence going to the essential elements of the case will not be reversed as against the manifest weight of the evidence.Seasons Coal Co. Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77,80.
The trial court heard conflicting testimony from appellant and her mother, and appellee. Appellant and her mother testified that sums of money given to the parties during the marriage were loans rather than gifts. Appellee testified that no repayment was ever discussed or demanded, except for one large sum advanced to pay off the mortgage on the parties' only major asset, their mobile home.
Pre-trial hearings were held concerning this large sum which had been advanced on the parties' behalf by appellant's mother. The magistrate found that appellant's mother had often given the parties money in order to help them through financial difficulties. In particular, she had made several of the monthly mortgage payments on their mobile home. She had also made payments toward the lot rental and had advanced sums toward expenses for building a porch and garage. In January 1996, the parties were threatened with the foreclosure of their mobile home. Appellant's mother made a payment of $13,409.91 to the mortgage company (the total balance owed) to prevent foreclosure. The magistrate found that although appellant's mother had never demanded repayment from the parties for monies previously provided, she had never before given them such a substantial sum. Appellant's mother testified that she had set an amortization schedule with very low monthly payments and had received some payments on the $13,409.91. The magistrate found her testimony credible and found that the $13,409.91 was a loan.
At trial, appellant's mother claimed that the payments she had made on the couple's monthly bills, mortgage payments, and expenses associated with building the garage and porch were marital debt. Appellant's mother acknowledged that she never made any demand verbally or in writing for repayment of any of the monies, except the $13,409.91 advanced to pay off the mortgage on the mobile home. She also testified that appellee never indicated that he intended to repay her for any of the other advanced sums. Appellee testified that appellant handled the financial transactions with her mother. He also testified that appellant's mother never asked for repayment on any sums until after the couple had separated. Appellee testified that she then requested payments on the $13,409.91.
The trial court found that none of the claimed debts were evidenced by a document of intent to repay and that except for the debt owed on the mobile home, no payments were ever made on the alleged debts. The court noted that conflicting testimony was offered as to whether the money provided was a gift or a loan. The trial court found there was insufficient credible evidence that the sums advanced (other than the final mortgage payoff of $13,409.91) had been intended as a loan.
We find no abuse of discretion. Where a case turns on the credibility of testimony, an appellate court may not substitute its own judgment if competent and credible evidence exists.Myers v. Garson (1993), 66 Ohio St.3d 610, 615-16. Here, there was competent and credible evidence supporting the trial court's decision that the funds other than the $13,309.41 were gifts and not loans. Therefore, appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] Appellee's previous three marriages had failed and he admitted to minimal relationships with his two adult children.