OPINION
Defendant-appellant Michele R. Wright (hereinafter "wife") appeals the May 8, 2000 Judgment Entry/Decree for Divorce entered by the Stark County Court of Common Pleas, Domestic Relations Division, which designated plaintiff-appellee Barry J. Wright (hereinafter "husband") as the residential parent of the parties' two minor children, and characterized $18,041.11 in credit card debt as non-marital property for which wife was to be responsible.
 STATEMENT OF THE FACTS AND CASE
Husband and wife were married on September 28, 1991, in Canton, Ohio. Two children were born as issue of said marriage, to wit: Kelsey (DOB 5/16/93) and Adam (DOB 5/5/95). On April 14, 1999, husband filed a Complaint for Divorce in the Stark County Court of Common Pleas, Domestic Relations Division. Wife filed a timely answer and counterclaim for divorce. On July 8, 1999, wife filed a Motion for Temporary Orders, requesting the trial court designate her as the residential parent and legal custodian of the two minor children, and grant her sole possession and control of the marital residence. Also on July 8, 1999, husband filed a Motion for Modification of Temporary Orders requesting he be designated as the residential parent and legal custodian of the children, and requesting an order wife undergo a psychological evaluation. After conducting a hearing on the motions, the magistrate designated husband as the residential parent and temporary legal custodian of the children, subject to companionship rights with wife. The magistrate also granted husband exclusive possession of the marital residence. The magistrate memorialized its decision via Order filed July 30, 1999. The guardian ad litem appointed for the children filed her first report on September 20, 1999. In her report, the guardian found the children to be comfortable with both parents in their respective homes. She noted the children appeared to be calmer when they were with wife and listened to her corrections more closely than they listened to husband's corrections. The guardian stated her belief wife was not a danger to anyone and that her presence in the marital residence would be welcomed by the children. The guardian's only concern with wife's returning to the marital residence was the possibility it may offer the children a false hope of reconciliation. Thereafter, wife was permitted to return to the marital residence. Wife had been removed from the marital residence on July 6, 1999, after she was arrested for domestic violence. Wife ultimately entered a plea of no contest to an amended charge of disorderly conduct, and no restrictions were placed upon her relative to access to the marital residence. The guardian ad litem filed a second report on December 13, 1999. By that time, husband had been removed from the marital residence, after wife filed charges of domestic violence against him in November, 1999. In her report, the guardian noted husband and wife were setting different rules for the children, causing chaos at bedtime, mealtimes, and in family routines. The guardian advised the court wife had been hospitalized at Massillon Community Hospital and registered into the Longford Program, and was subsequently placed in intensive care. Wife entered the Mercy Hospital IMPACT Program for out-patient treatment after her discharge from the hospital. At the time of the report, wife continued in the program with perfect attendance and excellent progress. The guardian stated each party had utilized the domestic violence statute, including removal of the offending spouse, in order to gain advantage for custody purposes. The guardian recommended the children remain in the marital residence with husband and wife alternating their respective times with the children. On April 3, 2000, the guardian filed her third report. The guardian informed the trial court of wife's struggle for sobriety, despite her participation in the IMPACT program and frequent attendance at AA meetings. The guardian opined, because wife had not adequately resolved her substance abuse issues, wife was not ready to be the residential parent. The guardian added wife continued to function in her employment and daily activities, and would never consciously put the children at risk. Without determining the extent of husband's involvement with the children prior to the filing of the divorce, the guardian stated husband "has now become quite capable of caring for his children." Third Guardian Ad Litem Report at 2, unpaginated. The guardian also noted wife "adds a very important dimension to [the children's] lives. Id. The matter came on for hearing on May 1, 2000. The parties agreed to the admission of the third guardian ad litem report as well as the results of the psychological testing of both parties conducted by Dr. Gerald Bello. Husband and wife were the only witnesses to testify at the hearing on May 1, 2000. Husband testified wife's problem with alcohol began to escalate after the birth of the parties' youngest child, Adam, in 1995. Husband recalled several incidences when wife's drinking impaired her ability to perform daily tasks, such as transporting the children to and from daycare or school. Husband also described two occasions when her drinking caused wife to physically mistreat the children. Both incidences occurred after one of the children had shown a preference for husband over wife. Husband stated he had found bottles of alcohol hidden throughout the house. On cross-examination, husband acknowledged his past use of marijuana, but claimed he had discontinued using the drug about two years prior to the hearing. Wife testified husband used marijuana on a daily basis, a couple of times per day. In response to husband's testimony he had not used marijuana in a couple of years, wife asserted such statement was untrue, and noted she positively knew husband smoked prior to the filing of the divorce, which was a year earlier. Wife also maintained, although she could not prove it, husband had smoked marijuana within the last year. Wife stated there had been occasions when husband drove his vehicle while transporting the children after he had been drinking alcohol or smoking marijuana. Wife acknowledged her own problem with alcohol, but explained the real problem started only after husband filed for divorce, and prior to that, she was only a social drinker. Wife described her role as the primary care taker of the children in extensive detail. On cross-examination, wife conceded husband cared for the children while she attended the IMPACT program for alcohol dependency, but quickly added her parents also helped. Wife testified she entered the IMPACT program in July, 1999, pursuant to a court order related to the domestic violence charge filed against her. In November, 1999, wife was hospitalized in the intensive care unit for alcohol withdrawal. Wife again entered the IMPACT program, which she continued to attend through the date of the hearing. Wife stated she attends AA meetings, and has not had a drink since March 5, 2000. Wife agreed husband's involvement with the children had increased since the filing of the divorce, and stated she considered him a capable parent. The parties also testified regarding the financial aspects of the action. Relevant to this appeal, husband testified he learned wife had caused a $9,000 debt to be incurred on a Key Bank Visa card in husband's name only, which he kept solely for "emergencies." Upon discovering the debt, husband questioned wife about it. Wife explained she changed the mailing address of the credit card from their residence to a post office box and would cash the convenience checks which came in the mail. Husband also learned wife had withdrawn $3,000 from husband's credit union account. Wife testified she handled the parties' finances, including banking and bookkeeping, from 1991, until the marital difficulties began. Wife acknowledged the credit card debt in the amount of $18,041.11, but explained financial difficulties forced her to use cash advances from the credit cards in order to pay medical bills, groceries, and utility bills. Wife claimed she did this in order to avoid arguments with husband over their finances. On cross-examination, wife admitted four of the five credit cards, upon which the debt was incurred, were in her individual name only. Wife admitted she took cash advances on husband's Key Bank Visa card. Wife also admitted she changed the mailing address of the Key Bank Visa to a post office box, but never advised husband of this change. At the conclusion of the hearing, the trial court announced its decision on the record. The trial court granted the parties' divorce upon the ground of incompatibility. The court awarded custody of the two minor children to husband. The court ordered the parties' real and personal property, except for certain pension and savings plans, and vehicles, be sold at public auction. The proceeds of the sale would be disbursed to pay the costs, commissions, and advertising of the sale as well as the payment of the parties' outstanding debts. However, the court ordered wife solely responsible for the $18,041.11 in credit card debt. The trial court memorialized its rulings in a Judgment Entry filed May 2, 2000. It is from this judgment entry wife appeals, raising the following assignments of error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN NAMING APPELLEE AS RESIDENTIAL PARENT, BECUASE [SIC] ITS DECISION WAS UNREASONABLE, ARBITRARY OR UNCONSIONABLE [SIC].
 II. THE TRIAL COURT'S ABUSED ITS DISCRETION BECAUSE ITS DECISION WAS NOT BASED ON THE FACTORS LISTED IN R.C. 3109.04(F)(1).
 III. THE TRIAL COURT'S CLASSIFICATION OF MARITAL DEBTS AS THE PERSONAL DEBTS OF APPELLANT AND THE RESULTANT UNEQUAL DISTRIBUTION OF MARITAL DEBT, WITHOUT A FINDING OF FACTS SUPPORTING ITS DECISION, CONSTITUTES AN ABUSE OF DISCRETION AS IT WAS ARBITRARY, UNREASONABLE OR UNCONSIONALBE [SIC].
 I, II
Because wife's first and second assignments of error are interrelated, we shall address said assignments together. In her first assignment of error, wife maintains the trial court abused its discretion by designating husband the residential parent of the parties' minor children. In her second assignment of error, wife submits the trial court abused its discretion by failing to base its decision regarding the allocation of parental rights on the factors set forth in R.C.3109.04(F)(1). Where an allocation of parental rights and responsibilities is supported by a "substantial amount of credible and competent evidence" the decision will not be reversed. See, Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418, quoting Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. A trial court's judgment in custody matters enjoys a presumption of correctness. Butler v. Butler (1995),107 Ohio App.3d 633, 638. Accordingly, a trial court has broad discretion when it decides the allocation of parental rights and responsibilities. Donovan v. Donovan (1996), 110 Ohio App.3d 615, 618. We will not disturb the decision of the trial court on appeal if said decision is supported by some competent, credible evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Absent an abuse of discretion, an appellate court will not reverse the custody award of the trial court. An appellate court should not substitute its judgment for that of the trial court. Trickey v. Trickey (1952), 158 Ohio St. 9. R.C. 3109.04(F)(1) provides: In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child
* * *
Upon review of the entire record in this matter, we find the trial court did not abuse its discretion in designating husband the residential parent and legal custodian of the parties' minor children. Although wife maintains the trial court did not base its decision upon the factors in R.C. 3109.04(F)(1) as set forth supra, we find nothing in this record which supports this assertion. In the absence of a record demonstration establishing the trial court did not consider the appropriate factors, we presume the trial court reviewed and considered said factors. Wife's first and second assignments of error are overruled.
 III
In her final assignment of error, wife contends the trial court abused its discretion in classifying marital debt as wife's personal debt, resulting in an unequal distribution of marital property. Specifically, wife takes issue with the trial court's ordering her to pay $18,041.11 in credit card debt, which the trial court classified as non-marital property, despite the fact it was incurred during the marriage. A trial court is vested with broad discretion when fashioning its division of marital property. Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609. As a general rule, the law requires that marital property be divided equally. See, R.C. 3105.171(C)(1). If, however, an equal division would produce an inequitable result, the property of the parties must be divided in such a way as the domestic relations court determines to be equitable. R.C.3105.171(D); Baker v. Baker (1992), 83 Ohio App.3d 700, 702; King v. King (1992), 78 Ohio App.3d 599, 604. In making a division of marital property or a distributive award, the trial court is required to consider all nine factors listed in R.C. 3105.171(F) and make written findings of fact to support its determination. See, R.C. 3105.171(G). Although husband refers this Court to portions of the record which the trial court could have used to support its ordering a distributive award to husband, the trial court failed to make any written findings of fact pertaining thereto. In the absence of a specific finding a distributive award is necessary to create an equitable division, we find the failure to consider wife's $18,041.11 credit card debt as marital renders the distribution of marital property unequal. Accordingly, we vacate only the portion of the trial court's judgment entry which deals with the division of marital property, and remand the matter to the trial court for further proceedings consistent with law and this opinion. Wife's third assignment of error is sustained.
The judgment entry of the Stark County Court of Common Pleas, Domestic Relations, is affirmed in part, and reversed and remanded in part.
 ____________________ Hoffman, J.
Gwin, P.J. and Reader, V.J. concur