KUEHN, APPELLEE, *v.* KUEHN, APPELLANT.

(No. CA87-10-023—Decided October 11, 1988.)

*Katz, Teller, Brant & Hild Co., L.P.A.,* and *Jerome S. Teller; Mechley, Robbins & Kelly* and *Frederic L. Goeddel,* for appellee.

*Gray & Duning* and *J. William Duning,* for appellant.

*Per Curiam.* On January 30, 1987, the Court of Common Pleas of Clinton County, Domestic Relations Division, entered a decree of divorce ending the twenty-five-year marriage of defendant-appellant, Carole K. Kuehn, and plaintiff-appellee, Edward D. Kuehn. On February 13, 1987, a referee recommended that all marital assets left undivided by the parties be divided equally, including fifty-nine shares of stock in Sabina Farmer's Exchange, Inc., which were held in appellee's name. The referee further recommended that no alimony be awarded to appellant and that each party pay his own attorney fees plus one half of the costs of the proceedings.

Appellee filed objections to the

referee's report and argued, *inter alia,* that nine of the fifty-nine shares of stock in Sabina Farmer's Exchange should not be considered marital property because they had been acquired by gift from appellee's mother. The court overruled appellee's objections on July 28, 1987 and adopted the referee's recommendations. Appellee then filed a motion for a new trial on August 11, 1987 and again argued that the nine shares of stock should not be considered marital assets. On September 8, 1987, the trial court, *sua sponte,* and without notice to either party, amended its July 28 entry to read: "The Common Stock of Sabina Farmer's Exchange shall be divided equally between parties, save and except the nine shares originally given to plaintiff by his parents, which shall be his and his alone." The court subsequently denied appellee's motion for a new trial on November 18, 1987 and appellant perfected the instant appeal, assigning error as follows:

First Assignment of Error

"The trial court erred in journalizing *sua sponte* an amended judgment entry on September 8, 1987, modifying its previous judgment entry of July 28, 1987, and changing the characterization of nine shares of stock of the marital business from that of a marital asset to a separate asset of the husband."

Second Assignment of Error

"The court erred in adopting the referee's recommendation that there be no award of sustenance alimony to defendant-appellant."

Appellant's first assignment of error concerns the trial court's characterization of the nine shares of stock that appellee received as a gift from his mother in 1972. As a general rule, properties acquired by gift, bequest, devise, or descent are con-

sidered nonmarital assets. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 75 O.O. 2d 474, 350 N.E. 2d 413; *Kay* v. *Kay* (Jan. 21, 1986), Butler App. No. CA85-06-062, unreported, at 5. However, such nonmarital property may be converted to marital property by the process of transmutation. See *Furrow* v. *Furrow* (Apr. 11, 1985), Cuyahoga App. No. 48741, unreported, at 2; *McDade* v. *McDade* (Sept. 16, 1981), Warren App. No. 376, unreported, at 5-6.

When considering an alleged transmutation the trial court, within its sound discretion, should consider (1) the expressed intent of the parties insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties. Banks-Baldwin's Ohio Domestic Relations Law (1987), Section T-25.02(H).

Applying the foregoing considerations to the case at bar, we find that the nine shares of stock were indeed transmuted into marital property. The parties were married in 1960. Appellee purchased twenty-five shares of stock in Sabina Farmer's Exchange in 1964 and an additional twenty-five shares in 1965. Then, in 1972, appellee's mother gave him the nine shares at issue. This gift was made as part of a plan to transfer control of the closely held family corporation to appellee and make him the sole holder of common stock.[1] Although these nine shares were evidenced by a single certificate

---

[1] After the gift in 1972, all common stock in the corporation was held by appellee (fifty-nine shares) and his mother (one hundred sixteen shares). In 1974, the cor-

in appellee's name, the record demonstrates that they were not segregated or otherwise treated any differently than the other fifty shares. Appellee conducted all corporate business based on a unified interest of fifty-nine shares and freely utilized corporate assets for personal, family, and household matters throughout the final thirteen years of the marriage. These circumstances certainly suggest a transmutation, and we so hold. The equity of this holding becomes clear when one considers the additional fact that the corporation has a potential value of two to four million dollars and represents the single largest asset of the marriage. To characterize the nine shares at issue as nonmarital property would reduce appellant from an equal partner in this venture to a minority shareholder subject to appellee's business practices. Such a result would be unreasonable and an abuse of discretion.

In addition to the substantive error outlined above, we also find that the trial court's *sua sponte* amendment to its July 28, 1987 judgment entry was procedurally improper. Civ. R. 60(A) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. * * *" This rule, however, authorizes the correction of clerical mistakes only. Substantive changes in judgments, orders, or decrees are not within its purview. *Musca* v. *Chagrin Falls* (1981), 3 Ohio App. 3d 192, 3 OBR 219, 444 N.E. 2d 475, paragraph one of the syllabus. The basic distinction between clerical mistakes that can be corrected under Civ. R. 60(A) and substantive

mistakes that cannot be corrected is that the former consists of "blunders in execution" whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner. *Blanton* v. *Anzalone* (C.A. 9, 1987), 813 F. 2d 1574, 1577 (interpreting Fed. R. Civ. P. 60[a]).

Here, the court apparently felt that it had made a legal mistake in characterizing the nine shares as marital property and amended its judgment entry accordingly. This amendment, however, represented a substantial change in the division of marital property, and clearly prejudiced appellant by leaving her as a minority shareholder. Such a substantial change may not be made without affording notice to the parties and an opportunity to be heard. See *Musca, supra*, at 194-195, 3 OBR at 221-222, 444 N.E. 2d at 478-479. Since neither notice nor an opportunity to be heard was provided, the trial court's action was clearly erroneous. The first assignment of error is sustained.

In her second assignment of error appellant argues that the trial court erred in adopting the referee's recommendation that no award of sustenance alimony be made to appellant. A review of the record, however, reveals that appellant expressly told the court that she did not want any sustenance alimony:

"Mr. Goodman: If it please the court, if we may go back on the record, to make the record perfectly clear, we are not asking for any alimony.

"* * *

"The Court: So you are not asking for any alimony, period, for any permanent alimony — to clarify that?

poration reorganized and the mother's shares were converted into preferred shares with a fixed value. This left

appellee's fifty-nine shares as the sole voting common stock.

"Mr. Goodman: We are not asking for any sustenance alimony at all, Your Honor."

As the award of alimony lies within the sound discretion of the trial court, *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 20 O.O. 3d 318, 421 N.E. 2d 1293, we find no error in the trial court's acceding to appellant's wishes regarding alimony. Furthermore, the record demonstrates that the referee reviewed the evidence and all relevant circumstances and concluded that appellant had shown no need for sustenance alimony. The trial court then conducted its own independent review and approved the referee's recommendation. Under the circumstances, we find no abuse of discretion.

Appellant also argues under her second assignment of error that the trial court abused its discretion in denying her request for reasonable attorney fees. We find no merit to this contention. One seeking to recover attorney fees must establish the reasonableness of those fees. *Cohen* v. *Cohen* (1983), 8 Ohio App. 3d 109, 8 OBR 143, 456 N.E. 2d 581, paragraph three of the syllabus. Appellant presented no evidence in this regard below and the court concluded that both parties had ample funds to pay their own attorney fees. Accordingly, we find no abuse of discretion on the part of the trial court. The second assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., and KOEHLER, J., concur.

HENDRICKSON, J., concurs in part and dissents in part.

HENDRICKSON, J., concurring in part and dissenting part. I agree with the majority that there is no merit to appellant's second assignment of error. Furthermore, the *sua sponte* amendment of the July 28, 1987 entry by the trial court was improper. Under the circumstances, no such entry would be proper without a hearing. Nevertheless, I consider the decision of the majority result-oriented and erroneous in finding "that the nine shares of stock were indeed transmuted into marital property."

The stock was a gift. There was a separate certificate issued for this stock. The majority contends these nine shares "were not segregated or otherwise treated any differently than the other fifty shares." Such a finding overlooks the significance of the retention of these shares in a separate certificate which can be identified as the gift. Of course, all corporate business was conducted without distinction as to the source of any of the shares of stock. Nevertheless, *it was only the income* from the stock ownership, *not the stock itself, that was transmuted into marital property.* After all, if instead of nine shares of stock, appellee's mother had given him a savings account or certificate of deposit of like value which appellee retained in his name, would there be transmutation? It does not seem logical to so find. However, if the income from such an account is used for family purposes, there is a transmutation of income generated by nonmarital property. That is essentially the situation in the case before us.

Of course, any division of the stock which makes either party the majority

shareholder will be to the disadvantage of the other shareholder, but any attempt to divide the nine shares without compensation to appellee would be unfair. Therefore, unless appellee can be fairly compensated for the division of the nine shares, it would be an abuse of discretion to order those shares divided equally between the parties.