OPINION
{¶ 1} The following appeal arises from a divorce decree issued by the Geauga County Court of Common Pleas, Domestic Division.
 {¶ 2} Appellant, Shirley A. Needles, and appellee, John W. Needles, III, were married in September 1998. It was appellee's fifth marriage and appellant's second, having been widowed ten years before. The couple resided in Parkman, Ohio, until November 9, 2000, when appellant filed a complaint seeking divorce.
 {¶ 3} The parties entered into a number of stipulations relating to all property and support issues. One of the stipulations addressed the ownership of the marital residence, which was awarded to appellee on the condition that he pay appellant the sum of $6,718.67 as compensation for marital equity. As a result of the stipulations, only two contested issues remained to be determined by the trial court. The first issue was whether a jointly titled fifteen-acre parcel of real estate was marital property or separate property belonging to appellee. Subsequent to the purchase of this property, appellee built a structure upon it, which he asserted was to be used solely for storage purposes. The second issue related to whether joint checking and saving accounts held at Middlefield Bank were marital property or separate property belonging to appellee.
 {¶ 4} A hearing on the matter was held on May 21, 2001. Subsequent to the hearing, the trial court issued findings of fact and conclusions of law in which it found that both the real property and the bank accounts were the separate property of appellee. Appellant timely filed the instant appeal and makes two assignments of error:
 {¶ 5} "[1.] The trial court's characterization of the real property as the separate property of the husband is against the manifest weight of the evidence.
 {¶ 6} "[2.] The trial court's determination that the funds in the jointly titled accounts were the separate property of the husband was against the manifest weight of the evidence."
 {¶ 7} In her first assignment of error, appellant avers that, in the matter sub judice, real estate was purchased during the marriage with funds from a bank account, which consisted of marital funds commingled with nonmarital funds, and the source of the funds used for the purchase could not adequately be traced back to solely nonmarital funds; therefore, the real estate, or a portion thereof, should be deemed marital property.
 {¶ 8} In a second issue under her first assignment of error, appellant contends the trial court erred in finding the real estate to be separate property when the evidence demonstrated that appellee intended to bestow a gift of an undivided, one-half interest in the real estate to appellant.
 {¶ 9} In reviewing a trial court's distribution of marital property, this court has held that the findings of the trial court will not be disturbed absent an abuse of discretion. Snyder v. Snyder (Dec. 22, 2000), 11th Dist. No. 99-G-2230, 2000 WL 1876614, at 2. Generally, all real and personal property that is currently owned by either or both spouses that was acquired during the marriage is presumed to be marital property. R.C. 3105.171(A)(3)(a)(i). A party asserting a claim for separate property bears the burden of proving, by a preponderance of the evidence, that the property is, in fact, separate. Seybert v. Seybert
(Dec. 14, 2001), 11th Dist. No. 99-T-0119, 2001 WL 1603089, at 2. Any inheritance by one spouse by bequest, devise or descent during the course of the marriage is deemed separate property. R.C. 3105.171(A)(6)(a)(i).
{¶ 10 Moreover, "the commingling of separate property with other property does not destroy the identity of the separate property as separate property, except if the separate property is not traceable."Letson v. Letson, (Sep. 30, 1997), 11th Dist. No. 95-T-5356, 1997 WL 663514, at 3. Traceability of an asset from its origin as a discrete, separate property to its current status is the primary means of determining whether the property is separate. Price v. Price (Jan. 25, 2002), 11th Dist. No. 2000-G-2320, 2002 WL 99534, at 2.
 {¶ 11} Prior to the enactment of R.C. 3105.171 in 1991, transmutation, the process of converting nonmarital property into marital property by commingling, was the law in Ohio. Kuehn v. Kuehn (1988),55 Ohio App.3d 245, 246. However, even with the enactment of R.C. 3105.171, the doctrine of transmutation has not been completely abolished. Letson, supra, at 4. This court has held that the trial court may look at whether traceability of the separate property was adequate in order to determine whether the doctrine of transmutation applies. Id. at 3.
 {¶ 12} In the instant case, the findings of fact and conclusions of law issued by the trial court state that the evidence, consisting of exhibits and testimony presented by appellee, sufficiently documented each of the distributions he received from his step-father's estate and that the distributions coincided with the initial purchase of the parcel, the subsequent payoff of the mortgage and payments made to contractors who constructed the building on the property.
 {¶ 13} The court also noted in its findings of fact that the distributions were initially deposited into appellee's account which was standing in his name alone and that appellee's wages and bonuses were electronically deposited into that account as well. During the marriage, appellee had deposited approximately $127,000 in wages and bonuses and approximately $371,000 in inheritance distributions into the account. Moreover, the court found that both appellee's income, as well as a portion of the inheritance distributions, were used to cover the couple's monthly expenses.
 {¶ 14} Thus, the trial court concluded that appellee adequately traced his inheritance distributions from the time they were initially received until they were used to purchase the real estate, pay off the mortgage and pay contractors to construct the utility building. We agree.
 {¶ 15} Although wages and bonuses were placed into appellee's individual checking account, the overwhelming majority of the balance from January 1998, to December 2000, was traced to distributions from his step-father's estate. Those distributions coincided with the money put forth to purchase the property, subsequently payoff the mortgage and construct the utility building. Appellee provided statements from the Venatta Family Trust account ("the Trust") with Merrill Lynch showing the distributions and their disbursement dates as well as canceled checks from the Trust and bank records showing the deposit of the money into appellee's account. Appellee also provided canceled checks showing the purchase of the property, the mortgage payoff and various checks to contractors that erected the building on the property. Appellee provided a detailed account of the funds and their movement.
 {¶ 16} Moreover, the overall time period involved between the initial purchase and the completion of the building was only a few years. Therefore, although appellee may have had his wages electronically deposited during that time, it is clear that the majority of the funds in the account used in relation to the real estate originated from appellee's inheritance disbursements. We conclude the trial court did not abuse its discretion in finding that appellee adequately traced his inheritance disbursements despite the commingling with the marital monies.
 {¶ 17} In appellant's second issue, she contends that, even if appellee adequately traced the purchase of the real estate to his inheritance, appellee converted the real estate and the building located thereon from separate property to marital property through an inter vivos gift, and appellant is entitled to a one-half, undivided interest in the property.
 {¶ 18} A spouse can convert separate property into marital property during the marriage via an inter vivos gift. Helton v. Helton
(1996), 114 Ohio App.3d 683, 685. The three elements of an inter vivos gift are: (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) the acceptance of the gift by the donee after the donor has relinquished control over the property.Gills v. Gills (Dec. 23, 1994), 11th Dist. Nos. 93-L-191 and 93-L-194, 1994 WL 738499, at 2. The donee must prove by clear and convincing evidence that the donor made an inter vivos gift. Helton,114 Ohio App.3d at 686.
 {¶ 19} A review of the record in the instant case reveals that the parcel was purchased in March 1999, and a joint survivorship deed was titled to both appellee and appellant. However, the fact that property is jointly titled to both spouses is not conclusive that it is marital property, but it is only a factor to be considered.Barkley v. Barkley, (1997), 119 Ohio App.3d 155, 161.
 {¶ 20} Appellant and her daughter both testified at trial that appellee had urged appellant to give her home to her daughter because he would provide her with a home. Appellant subsequently conveyed her home to her daughter. Appellant also testified that appellee convinced her to quit her job and be responsible for the homemaking duties. Appellant further stated that the structure built on the disputed property was to be a utility building containing a second floor residence where appellant and appellee would reside when appellee could no longer maintain his log cabin.
{¶ 21} Appellee testified to the following at trial: the property was not purchased with the intention of building a residence for appellee and appellant, rather, appellee's objective was to construct a storage barn, in which he could store boats and repair tractors; another reason he purchased the lot was so that he would have direct access from the street to his property (he had previously relied on a right of way); he never asked appellant to quit her job; he did not tell appellant that he purchased the property for both of them; and, finally, he never had any intention of gifting the property to appellant.
 {¶ 22} Most importantly, the stipulations indicate that appellant did acquire a partial interest in the marital residence worth $6,718.67. The property at issue here was clearly not the primary marital residence. Thus, it could not have been intended to be the "home" allegedly promised by appellee.
 {¶ 23} The trial court did not address the issue of an inter vivos gift in its findings of fact. However, it was in the best position to weigh the credibility of the testimony of the witnesses and determine appellee's intent. In view of the conflicting testimony contained in the record, as well as the stipulations, we cannot conclude that the trial court erred in determining in its conclusions of law that appellant failed to prove, by clear and convincing evidence, appellee's intent to make an inter vivos gift of the property to appellant. Therefore, appellant's first assignment of error is without merit.
 {¶ 24} Appellant contends in his second assignment of error that the evidence shows that both separate and marital funds where commingled in the joint accounts, and appellee failed to trace these funds as his separate property.
 {¶ 25} The couple maintained joint checking and savings accounts at Middlefield Banking Company. Appellee withdrew approximately $19,000 from both accounts shortly after the parties separated. The trial court found that appellee had adequately traced the monies to his own separate property based on the sale of a sailboat that appellee had owned prior to the marriage and deposits of inherited funds into the account by appellee.
 {¶ 26} At the hearing, appellee testified that he had made deposits from his inheritance distributions into the joint checking account. Appellee provided copies of deposit slips and canceled checks to trace the separate monies into the joint account. The trial court held that the transactions were supported by credible evidence and undisputed by appellant. We agree.
 {¶ 27} As noted above, where appellee has been able to adequately trace the separate property, commingling with marital property does not preclude a finding that the property remains separate. Thus, the trial court did not abuse its discretion in finding that the amount of money appellee withdrew from the joint accounts was separate property, and appellant's second assignment of error is without merit.
 {¶ 28} For the foregoing reasons, the decision of the Geauga County Court of Common Pleas, Domestic Relations Division, is affirmed.
JUDITH A. CHRISTLEY, J., concurs.