OPINION
{¶ 1} Appellant Terrie Lynn Hildebrand appeals from her divorce in the Morrow County Court of Common Pleas. Appellee Edward Lee Hildebrand is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married on May 18, 1984. Three children were born of the marriage. On May 10, 2000, appellant filed a complaint for divorce. Appellee answered and filed a counterclaim. The parties were ultimately able to reach an agreement on a number of issues. Evidentiary hearings were held before the magistrate on the unresolved issues on March 1, 2001 and May 18, 2001.
 {¶ 3} On December 12, 2001, the magistrate issued his decision. The magistrate found, per the parties' stipulation, that the equity in the marital residence in Mt. Gilead, Ohio, equaled $42,000 ($126,000 real estate valuation less $84,000 mortgage balance). The magistrate further found that appellee had failed to produce sufficient evidence that the down payment on the marital home, which appellee testified was traceable to part of a gift of $79,000 from his mother, constituted separate non-marital property. Inter alia, the magistrate thereupon awarded the marital residence to appellee, but ordered him to pay $21,000 to appellant for her share of the equity therein.
 {¶ 4} Appellee filed an objection to the decision of the magistrate, pursuant to Civ.R. 53. After reviewing the magistrate's decision, the trial court reversed the recommendation as to the division of the marital residence value. The court ruled in pertinent part as follows:
 {¶ 5} "With respect to Objection One regarding the alleged `inheritance' received by the husband, the record clearly shows that it was a gift from the husband's mother in the amount of $69,000.00. There was also a gift from the husband's mother to the wife in the amount of $10,000.00. The evidence also clearly established that all of the money was used to pay off debts incurred during the marriage and to use as a downpayment (sic) on the house. The Court finds that the $42,000.00 equity in the house shall therefore be considered 87.34% as the husband's and 12.66% as the wife's. This modifies the Magistrate's Decision by requiring the husband to pay to the wife the sum of $5,316.45 for the Wife's share of the equity." Judgment Entry, August 2, 2002.
 {¶ 6} On August 27, 2002, appellant filed a notice of appeal, and herein raises the following sole Assignment of Error:
 {¶ 7} "I. THE TRIAL COURT ABUSED ITS DISCRETION PREJUDICIAL TO THE PLAINTIFF BY AWARDING 87.34% OF THE EQUITY IN THE MARITAL DWELLING TO THE DEFENDANT."
 {¶ 8} Appellee has also submitted a cross-assignment of error, having filed a notice of cross-appeal on September 9, 2002:
 {¶ 9} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING ALL OF THE EVIDENCE BEFORE AWARDING THE PLAINTIFF CUSTODY OF THE PARTIES' CHILDREN."
 Direct Appeal I. {¶ 10} In her sole Assignment of Error, appellant argues the trial court abused its discretion in dividing the equity in the parties' marital home. An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. R.C. 3105.171 explains a trial court's obligation when dividing marital property in divorce proceedings as follows: "(C)(1) Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." See alsoCherry, supra., at 355, 421 N.E.2d 1293. On appellate review, the trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division of marital assets. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222, 459 N.E.2d 896.
 {¶ 11} Specifically, pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. Zeefev. Zeefe (1998), 125 Ohio App.3d 600, 709 N.E.2d 208.
 {¶ 12} The record reveals that in October 1999 appellee's mother sold her farm property and thereafter gave appellant the sum of $79,000 and appellee the sum of $10,000. The two checks were both deposited in the parties' joint checking account. Appellee used the $10,000 gift to pay off her automobile and student loans. Of the $79,000 gift, part was utilized to pay off debts incurred during the marriage, while approximately $46,000 was used to provide a down payment for the purchase of the marital home in February 2000.
 {¶ 13} R.C. 3105.171(A)(6)(b) reads: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." In Valentine v. Valentine (Jan. 10, 1996), Ashland App. No. 95COA01120, we analyzed whether the doctrine of transmutation still exists in light of the language of R.C.3105.171(A)(6)(b). We concluded that the doctrine remains valid. We further concluded: "The intentional act of converting ownership is transmutation. It is undisputed one spouse can make a gift of separate property to another. The action of placing separate property into a joint and survivorship account and facts substantiating a present intention togift the property to the other can transmute the separate property to marital property." Id. at 2, emphasis added.
 {¶ 14} In the case sub judice, despite the original determination by the magistrate that appellee had failed to produce sufficient evidence of tracing or separateness concerning the down payment monies, no dispute is evident in the record that appellee's mother was the source of the respective gifts to the parties of $79,000 and $10,000. See Tr. 48, 59, 131-133. Furthermore, appellant admitted utilizing her $10,000 gift for payment on her student loan and automobile debt on her Mazda. Tr. at 58-59. Accordingly, we are unpersuaded that the trial court abused its discretion in implicitly overruling the magistrate as to separateness and traceability. However, as we held in Black v. Black (Nov. 4, 1996), Stark App. No. 1996CA00052, a trial court must take another step in such circumstances and determine whether transmutation has occurred under the factors set forth in Kuehn v. Kuehn (1988), 55 Ohio App.3d 245; i.e., "(1) the expressed intent of the parties, insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties." Kuehn at 246. See, also, Tulgan v. Tulgan
(June 8, 1992), Stark App. No. CA-8610.
 {¶ 15} We therefore find merit in appellant's Assignment of Error, in that the trial court awarded appellee 87.34%[1] of the marital home's equity without determining whether transmutation had occurred, as per the above precedent. We therefore reverse and remand the issue of transmutation to the trial court to apply those factors set forth in Kuehn.
 {¶ 16} Appellant's sole Assignment of Error is sustained.
 Cross-Appeal I. {¶ 17} In his sole Assignment of Error on Cross-Appeal, appellee/cross-appellant contends the trial court abused its discretion by failing to consider all the evidence in making a determination on the issue of parental rights and responsibilities. We disagree.
 {¶ 18} Appellee specifically contends the trial court relied too heavily on the report of psychologist Diana Wilkerson, Ph.D., who prepared a fifteen-page custody evaluation recommending custody to appellant-mother. Appellee further alleges Wilkerson's report and testimony relied on hearsay. However, as the following exchange during appellant's case-in-chief reveals, appellee objected to claimed hearsay despite the earlier introduction of Wilkerson's report:
 {¶ 19} "Q. Doctor, there was a mention in your report about concerns or issues involving how father, if you will in my words, lusted after his daughter or did certain things that would give concern to yourself, do you know what subject I'm talking about?
 {¶ 20} "A. Yes, I am and I did not see that in my office. That was mentioned by several references.
 {¶ 21} "Q. Whose references?
 {¶ 22} "A. Both Mr. Hildebrand's and Mrs. Hildebrand.
 {¶ 23} "Q. What were those references, what did they say in the matter of words?
 {¶ 24} "A. They said that Brittani dresses very seductively and Ed looks her up and down very appraisingly in a sexual way.
 {¶ 25} "MR. HOWLAND: I would move to strike all of this as hearsay, your Honor.
 {¶ 26} "MR. WAGNER: Your Honor, this is part of the Doctor's report and the reference and it is in the report. It is stipulated as being admissible.
 {¶ 27} "MR. HOWLAND: Your Honor, regardless of whether the report is in or not it is still hearsay. It is being offered for the truth of the matter asserted. She has no personal knowledge of this, your Honor, none. She just testified to the fact that she didn't observe any of this conduct in her office.
 {¶ 28} "MR. WAGNER: She testified that this — —
 {¶ 29} "MR. HOWLAND: She testified about people that she said she heard it from.
 {¶ 30} "MR. WAGNER: If the report is stipulated how can this lady not testify about the report, your Honor?
 {¶ 31} "THE COURT: Well, that's what I'm — —
 {¶ 32} "MR. HOWLAND: Your Honor, I feel that to strike up and slash the report so that every scrap of hearsay is (sic) in it doesn't come in would be unfair and unyielding. I'm trusting that the Court will sort out what it says and what isn't and that was my intention in stipulating that report. Now, we want to, you know, shove it into the record as gospel, that my client lusts for his own daughter.
 {¶ 33} "THE COURT: Well, I'll certainly the Court is not taking what she is repeating from somebody else as the gospel or absolute fact. Yeah, I agree that it is hearsay, but I also agree with your statement that it is in the report and I have already seen it so this is nothing new. So I guess I'll allow the testimony to continue but no, the Court is not accepting the fact that she says that as making it necessarily true. All right." Tr. at 87-89.
 {¶ 34} We further note that Wilkerson's report included extensive testing and personality inventories of both parents and all three children. Additionally, both appellant and appellee testified at trial. Our task in reviewing a trial court's evidentiary rulings is to look at the totality of the circumstances in the case, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing the disputed evidence. See State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027. Moreover, in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. Thompson v. Thompson (1987), 31 Ohio App.3d 254,258, citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13. The trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. See State v. DeHass (1967), 10 Ohio St.2d 230. Finally, when a trial court functions as a finder of fact, it is presumed the court considers only properly admitted evidence. State v. Wiles
(1990), 59 Ohio St.3d 71.
 {¶ 35} Upon review of the record, we are unpersuaded the trial abused its discretion in its assessment of the evidence pertaining to custody of the parties' three children.
 {¶ 36} Appellee/cross-appellant's sole Assignment of Error on cross-appeal is overruled.
 {¶ 37} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Morrow County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
By: Wise, J., Farmer, P.J., and Boggins, J., concur.
[1] The trial court mistakenly used a figure of $69,000 as the amount of appellee's gift from his mother, perhaps concluding the $79,000 amount was the total of both parties' gifts. Appellee has not cross-appealed this error. The figure of 87.34% was apparently based on the result of dividing $69,000 by $79,000.