OPINION
{¶ 1} Appellant, Carla J. Lewis, appeals from the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, which granted appellant a divorce from appellee, Darrell L. Lewis, and effectuated a division of property between the couple. For the reasons that follow, we affirm the judgment of the trial court in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} Appellant and appellee were married on June 17, 1995, and no children were born as issue of their marriage. At the time of their marriage, appellant ("Carla") owned a home in Atwater, Ohio with a fair market value of $59,800 and a mortgage in the amount of $27,000. In 1999, the parties bought a residence in Florida for $30,000. The second home was titled in both parties' names. The $30,000 was obtained by refinancing the Atwater home. A new mortgage was established on the Atwater property in the amount of $58,000. In other words, the parties borrowed $30,000 against the Atwater property to buy a second home in Florida free and clear.
 {¶ 3} In dividing the parties' assets, the trial court found that the Atwater home was worth $70,000 at the time of the final hearing on July 2, 2002, which meant the house had appreciated $10,200 during the marriage. The trial court awarded the Atwater house to Carla, found the appreciation to be marital, and concluded that appellee ("Darrell") was entitled to one-half of the appreciation which amounted to $5,100. The trial court did not specify what the amount of the mortgage was on the Atwater home at the time of the final hearing nor which party was responsible for its payment, but we assume the court intended Carla to pay the mortgage as she was awarded the house, and there was no indication that Darrell was responsible for any of this debt.
 {¶ 4} Regarding the Florida residence, at the time of the final hearing, the trial court found that it had a fair market value of $47,000 with no mortgage. Thus, the property had appreciated $17,000 from the time the couple purchased the house. The court ordered the property to be sold with the net proceeds being divided equally between the parties. Each party had an option to keep the house and buy out the other party's share for $23,500.
 {¶ 5} Additionally, during the parties' marriage, Darrell was injured in an automobile accident. As a result, he received $20,175 from a personal injury settlement. While Carla was aware of the accident and the lawsuit, she was never informed of the settlement and, allegedly, her signature had been forged on the settlement check. The trial court awarded the full settlement to Darrell.
 {¶ 6} Finally, there was evidence presented that Darrell's mother had given $29,000 to the parties during their marriage. Carla claimed that the money was a gift to Darrell, but Darrell alleged that it was a loan to both parties. The trial court found that the conveyance was a loan and that each party was responsible for paying back Darrell's mother for one-half of the total, or $14,500.
 {¶ 7} Carla timely filed a notice of appeal from the trial court's decision granting the parties a divorce. She has now set forth three assignments of error:
 {¶ 8} "[1.] The trial court erred to the prejudice of appellant in neglecting to find that appellant was entitled to a $30,000.00 interest as separate property in the real estate purchased in Florida during the marriage in 1999.
 {¶ 9} "[2.] The trial court erred to the prejudice of appellant in neglecting to grant appellant an award from the personal injury settlement received by appellee.
 {¶ 10} "[3.] The trial court erred to the prejudice of appellant in finding that she was liable for one-half of the $29,000.00 in funds given to appellee by his mother."
 {¶ 11} In the first assignment of error, Carla contends that the trial court erred by finding that the Florida home was totally marital property. We agree. We first note that the trial court never explicitly stated that the Florida home was marital property but, by dividing it evenly, we infer that the trial court determined that it was marital, rather than separate, property.
 {¶ 12} It is well established that the trial court enjoys broad discretion in formulating the division of marital assets and liabilities in a divorce action.[1] As a reviewing court, we are limited to a determination of whether the trial court abused its discretion in dividing the property.[2] The term "abuse of discretion" implies more than just an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[3] Hence, a trial court's failure to apply relevant statutory provisions would constitute an abuse of discretion.
 {¶ 13} The division of assets in a divorce case is governed by R.C. 3105.171. Pursuant to R.C. 3105.171(B), the trial court must first determine what property of the parties constitutes marital property and what property constitutes separate property. Then, the trial court "is required to divide the marital property equitably with the separate property generally being returned to the spouse who acquired it."[4]
 {¶ 14} R.C. 3105.171(A)(6)(b) further provides, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." In Needles v. Needles, this court stated that "[t]raceability of an asset from its origin as a discrete, separate property to its current status is the primary means of determining whether the property is separate."[5]
 {¶ 15} Marital property is defined in R.C. 3105.171(A)(3)(a), and includes:
 {¶ 16} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 17} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 18} "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]"
 {¶ 19} Separate property, however, is defined by R.C.3105.171(A)(6)(a), and includes:
 {¶ 20} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 21} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage[.]"
 {¶ 22} Prior to the enactment of R.C. 3105.171 in 1991, transmutation — the process of converting separate property into marital property by commingling — was the law in Ohio.[6]
However, R.C. 3105.171 has not completely abolished transmutation.[7]
This court held that transmutation can be considered but not without addressing the traceability of funds.[8]
 {¶ 23} It is also well established that the burden of proving that property is separate under R.C. 3105.171 is upon the proponent of the claim.[9] The separate nature of the property must be established by a preponderance of the evidence.[10]
 {¶ 24} In the instant cause, it is apparent that the trial court found the Florida house to be marital property. Carla, however, takes issue with the characterization of that property as marital. Specifically, she argues that the Florida house came from her own separate property.
 {¶ 25} To begin our analysis, we start with the fact that the Atwater house was brought into the marriage by Carla. Thus, pursuant to R.C. 3105.171(A)(6)(a)(ii), the house was, at least initially, Carla's separate property. Additionally, the trial court found that it had a fair market value at the time of the marriage of $59,800, with a mortgage of $27,000. That is undisputed. Thus, Carla had $32,800 in equity in the Atwater home at the time of the parties' marriage.
 {¶ 26} Four years later, in 1999, the parties refinanced the Atwater property and took $30,000 in proceeds and bought the Florida property. There is no evidence as to the fair market value of the Atwater property at the time of refinancing, however, it is safe to assume that its value was somewhere between the 1995 value of $59,800 and the 2002 value of $70,000. Hence, the vast majority, if not all, of the $30,000 cash that was extracted from the equity in the Atwater home in the form of refinanced capital had to be from Carla's separate property. While there is evidence that Darrell made mortgage payments on the Atwater property during the couple's marriage, that would only help to make the appreciation on the house to be considered marital property. It would not effect the equity that Carla already had in the house.
 {¶ 27} Accordingly, the Florida property, at the time of its purchase, was either one hundred percent Carla's separate property or, at the very least, the vast majority of it was separate property. Hence, it was an abuse of discretion for the trial court to treat the Florida residence as marital property.
 {¶ 28} Between the time the Florida residence was purchased and the date of the final hearing, it would have been possible for the property to have transformed from separate to marital but that could only have occurred had there been an inter vivos gift.[11] An inter vivos gift occurs when a donor executes "an immediate, voluntary, gratuitous and irrevocable transfer of property" in favor of a donee.[12]
 {¶ 29} "The donee bears the burden of proving by clear and convincing evidence that the donor made an inter vivos gift."[13] In the case sub judice, there was no evidence presented that Carla intended to make an immediate gift of the Florida residence to Darrell.
 {¶ 30} Additionally, the fact that the Florida residence was titled in both parties' names is not dispositive of whether it should be labeled marital instead of separate property. R.C. 3105.171(H) provides in relevant part:
 {¶ 31} "[T]he holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property."
 {¶ 32} As this court noted in Frederick:
 {¶ 33} "Under prior case law, the presence of both parties' names on a joint title may have given rise to the presumption that appellant had foregone whatever separate interest [she] had in the property by gifting fifty percent of it to appellee as marital property. Since the enactment of R.C. 3105.171, however, the presumption of a gift has been negated. * * * Rather, a trial court may make such a finding only upon an appropriate factual context."[14]
 {¶ 34} In the present case, since there was no evidence to suggest that Carla intended to relinquish by gift to Darrell any separate interest she had in the Florida property, the fact that the Florida property was titled in both parties' names was insufficient, by itself, to establish that an inter vivos gift had occurred.
 {¶ 35} Accordingly, Carla's first assignment of error is well taken. The implied characterization of the Florida residence as marital property was against the manifest weight of the evidence. Thus, the trial court's decision must be reversed and the matter remanded. On remand, the trial court is instructed to determine what percentage of the value of the Florida residence can be traced back to the Atwater residence, which was clearly separate property at the time of the parties' marriage, and at least the vast majority of which was still separate at the time the Florida residence was purchased. The trial court must also consider that any appreciation in the fair market value of either residence may or may not represent passive income and appreciation pursuant to R.C.3105.171(A)(6)(a)(iii). The court needs to clarify whether or not it determined that the Atwater house was marital property at the time of the final hearing, and who was responsible for the mortgage payments that remained.
 {¶ 36} We also note that any resulting inequitable separate property award may be balanced by the trial court in its discretion.
 {¶ 37} In the second assignment of error, Carla contends that the trial court erred by neglecting to award her part of Darrell's personal injury settlement. Specifically, Carla argues that she is entitled to part of that $20,175 award because she cared for and looked after Darrell when he was injured and, also, because of his "financial wrongdoing and misconduct" during the marriage and at the time of their divorce.
 {¶ 38} Pursuant to R.C. 3105.171(A)(6)(a)(vi), separate property is defined as "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[.]" Hence, personal injury settlements are generally characterized as separate property except to the extent that the settlement proceeds reimbursed an injured spouse for lost marital earnings or other expenses paid from marital assets.[15]
 {¶ 39} However, any portion of a personal injury settlement which compensates a spouse for that spouse's direct injury, such as a loss of consortium claim, is the separate property of that spouse.[16]
 {¶ 40} In the instant cause, there was no evidence presented to the trial court that any of the settlement award was for loss of consortium, lost earnings, or for reimbursement for other expenses paid from marital assets. Accordingly, the trial court properly concluded that the total personal injury settlement was Darrell's separate property.
 {¶ 41} Additionally, we note that any alleged financial wrongdoing or misconduct on the part of Darrell is irrelevant to the determination of whether the personal injury settlement should be characterized as separate or marital. Thus, Carla's second assignment of error is without merit.
 {¶ 42} In the third assignment of error, Carla asserts that the trial court erred in determining that she was liable for one half of the $29,000 in funds given to Darrell by his mother. She argues that there was no evidence presented as to terms of repayment, interest rate, or anything in writing establishing that the money was a loan rather than a gift solely to Darrell.
 {¶ 43} Darrell points out, however, that of the $29,000, $19,000 was used to pay off Carla's credit cards. Furthermore, Carla testified at the final hearing that the money was a loan.
 {¶ 44} Under these circumstances, we cannot conclude that it was an abuse of discretion to characterize the $29,000 as a marital debt. Financial dealings between family members will often times take the form of oral agreements. That does not mean that they are unenforceable or should be looked upon as a legal fiction. Carla has failed to show that the trial court's decision in this regard was arbitrary, unreasonable or unconscionable. Thus, Carla's third assignment of error is without merit.
 {¶ 45} Based on the foregoing analysis, the judgment of the trial court is hereby affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
DONALD R. FORD, P.J., and CYNTHIA WESCOTT RICE, J., concur.
[1] Cherry v. Cherry (1981), 66 Ohio St.2d 348; paragraph two of the syllabus. Letson v. Letson (Sept. 30, 1997), 11th Dist. No. 95-T-5356, 1997 WL 663514, at *2.
[2] Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] Letson, supra, at *2, citing R.C. 3105.171(D).
[5] Needles v. Needles, 11th Dist. No. 2001-G-2386, 2002-Ohio-7128, at ¶ 10.
[6] Kuehn v. Kuehn (1988), 55 Ohio App.3d 245, 246.
[7] Letson, supra, at *4.
[8] Id. at *5.
[9] Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
[10] Id.
[11] Barkley v. Barkley (1997), 119 Ohio App.3d 155, 160.
[12] Smith v. Shafer (1993), 89 Ohio App.3d 181, 183.
[13] Frederick v. Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 WL 522170, at *7, citing In re Estate of Fife (1956),164 Ohio St. 449, 456.
[14] (Citations omitted.) Frederick, supra, at *9.
[15] Smith v. Smith (Oct. 15, 1999), 11th Dist. No. 98-A-0034, 1999 WL 1488950, at *3, citing Everhardt v. Everhardt (1991),77 Ohio App.3d 396.
[16] See Marcum v. Marcum (1996), 116 Ohio App.3d 606, 614.