OPINION
{¶ 1} Appellant Terrie Lynn Hildebrand appeals from the property division award in her divorce in the Morrow County Court of Common Pleas. Appellee Edward Lee Hildebrand is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married on May 18, 1984. On May 10, 2000, appellant filed a complaint for divorce. Appellee answered and filed a counterclaim. Evidentiary hearings were held before the magistrate on March 1, 2001 and May 18, 2001.
 {¶ 3} On December 12, 2001, the magistrate issued his decision. The magistrate found, per the parties' stipulation, that the equity in the marital residence in Mt. Gilead, Ohio, equaled $42,000 ($126,000 real estate valuation less $84,000 mortgage balance). The magistrate further found that appellee had failed to produce sufficient evidence that the down payment on the marital home, which appellee testified was traceable to part of a gift of $79,000 from his mother, constituted separate non-marital property. Inter alia, the magistrate thereupon awarded the marital residence to appellee, but ordered him to pay $21,000 to appellant for her share of the equity therein.
 {¶ 4} Appellee filed an objection to the decision of the magistrate, pursuant to Civ.R. 53. After reviewing the magistrate's decision, the trial court reversed the recommendation as to the division of the marital residence value, and ordered that the $42,000.00 equity in the house be divided as 87.34% to appellee and 12.66% to appellant.
 {¶ 5} Appellant appealed to this Court on August 27, 2002. Upon review, we reversed and remanded to the trial court on the issue of transmutation of property. See Hildebrand v.Hildebrand, Morrow App. No. 954, 2003-Ohio-3654. Upon remand, the trial court conducted a hearing pursuant to our directive. On May 9, 2004, the trial court issued a judgment entry finding that the financial gifts appellee and appellant had received in October 1999 from appellee's mother ($79,117.54 and $10,000, respectively) had not been transmuted, and that the marital home equity should be divided as 88.78% to appellee and 11.22% to appellant.[1]
 {¶ 6} Appellant filed a notice of appeal on September 22, 2004.[2] She herein raises the following sole Assignment of Error:
 {¶ 7} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS A MATTER OF LAW BY FAILING TO DETERMINE THAT CERTAIN SEPARATE PROPERTY TRANSMUTED INTO MARITAL PROPERTY."
 I. {¶ 8} In her sole Assignment of Error, appellant contends the trial court abused its discretion in failing to find the existence of transmutation of gifted property into marital property. We disagree.
 {¶ 9} R.C. 3105.171(A)(6)(b) reads: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." Despite the language of R.C. 3105.171(A)(6)(b), "[t]he intentional act of converting ownership is transmutation. It is undisputed one spouse can make a gift of separate property to another. The action of placing separate property into a joint and survivorship account and facts substantiating a present intention to gift the property to the other can transmute the separate property to marital property." Valentine v. Valentine (Jan. 10, 1996), Ashland App. No. 95COA01120. The factors for determining whether transmutation has occurred are set forth in Kuehn v.Kuehn (1988), 55 Ohio App.3d 245, 246, 564 N.E.2d 97: "(1) The expressed intent of the parties, insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties." See, also, Tulgan v. Tulgan (June 8, 1992), Stark App. No. CA-8610. Additionally, as a general rule, "* * * the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H).
 {¶ 10} In the case sub judice, the trial court held a hearing addressing transmutation pursuant to our directive, and thereafter issued a well-reasoned judgment entry applying theKuehn factors, supra. As the court noted, there is no dispute that the $79,000 gift to appellee and the $10,000 gift to appellant came from appellee's mother, Marjorie Hildebrand. On October 18, 1999, these gift monies were deposited in appellee and appellant's joint checking account, the only checking account either party maintained. The transcript indicates that appellee never verbally expressed a donative intent to appellant in regard to the gift monies, and vice versa. Tr. at 31, 45. Marjorie, the donor, essentially testified that she wanted to give appellee and her other son an early "inheritance," as she could no longer maintain the family farm following the passing of her husband in 1998.
 {¶ 11} The record further reveals that on October 26, 1999, appellant wrote a check out of the joint account and deposited $62,000 in the parties' joint savings account, which at the time had a balance of just $50.96. Tr. at 15. The down payment on the marital residence was then taken from the joint savings account. The closing on the marital residence took place four months later, on February 29, 2000. However, appellant moved out less than two months later, and filed for divorce only about one month after that. According to appellee, appellant stayed at the house only a total of approximately ten nights. Tr. at 46. As the trial court aptly observed, "* * * the breakup came at a time shortly after [appellee] received the gift from his stepmother. The value of the house is essentially the major asset of the parties, and they had very limited assets prior to receiving the gifts * * *." Judgment Entry at 2.
 {¶ 12} "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." Valentine, supra, citing Peck v.Peck (1994) 96 Ohio App.3d 731, 734. In order to find an abuse of that discretion, we must determine the trial court's order was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. In the case sub judice, although commingling occurred by virtue of the parties' depositing of the two respective gifts into a joint checking account and subsequent purchase of a house, we are unpersuaded, in light of the Kuehn factors, that the trial court abused its discretion by finding no transmutation and thereby dividing the equity in the marital home as 88.78% to appellee and 11.22% to appellant.
 {¶ 13} Accordingly, appellant's sole Assignment of Error is overruled.
 {¶ 14} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Morrow County, Ohio, is affirmed.
Wise, J., Hoffman, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morrow County, Ohio, is affirmed.
Costs to appellant.
[1] Although not articulated in the judgment entry at issue, we surmise the mathematical basis of appellee's percentage is $79,117.54 divided by the aggregate gift sum of $89,117.54.
[2] We note the "notice of appeal" date was well after thirty days past the judgment entry under appeal. However, the trial court's docket sheet does not reflect when the judgment entry was served on the parties. See Civ.R. 58(B). We will therefore proceed to the merits in this appeal. See, e.g., In re Mills,
Richland App. No. 01 CA 96, 2002-Ohio-2503.