DECISION AND JUDGMENT ENTRY
{¶ 1} Robin Lee Shaver appeals the judgment of the Gallia County Court of Common Pleas modifying the parties' divorce decree pursuant to Civ.R. 60(A). Ms. Shaver contends that the trial court exceeded its authority under Civ.R. 60(A) by substantively modifying the parties' divorce decree to deprive her of the $11,000 she would receive as her portion of Mr. Shaver's pension benefits. Because we find that the judgment effectively corrected a clerical error in the original judgment entry decree of divorce, we disagree. Accordingly, we affirm the trial court's judgment.
 I. {¶ 2} At the parties' final divorce hearing on June 1, 1998, the parties indicated that they had reached an agreement regarding the division of the marital property, and Ms. Shaver's counsel recited the terms of the agreed division on the record. On January 22, 1999, the trial court issued a decree of divorce. The decree set forth the division of marital property and debts, and explicitly incorporated the transcript of the final divorce hearing as if fully rewritten in the decree.
 {¶ 3} As part of that property division, Mr. Shaver was to keep the marital residence and Ms. Shaver was to "convey forthwith, by sufficient deed, all her interest in this property to [Mr.] Shaver." Because the assets retained by Mr. Shaver had greater monetary value than those retained by Ms. Shaver, Mr. Shaver was to pay a cash settlement to Ms. Shaver.
 {¶ 4} With regard to the cash settlement, the decree specifically provided:
A. In order that each party receive an equitable share of marital assets and debts, [Ms.] Shaver shall receive from [Mr.] Shaver a cash settlement of $11,000.00 representing [Ms.] Shaver's equity and/or share of [Mr.] Shaver's retirement/pension plans.
B. [Ms.] Shaver shall also receive from Michael Shaver a cash settlement of $53,504.79 representing
[Ms.] Shaver's equity and/or share of the marital residence.
 {¶ 5} After the court issued the decree, the case remained inactive until November 17, 2004, when Mr. Shaver filed a motion, pursuant to Civ.R. 37 to compel Ms. Shaver to execute the quitclaim deed as required by the terms of the decree. The parties appeared before court on February 22, 2005. At that time, the court ordered the parties to submit a brief and proposed entry no later than Wednesday, March 9, 2005.
 {¶ 6} In his brief, Mr. Shaver alleged that he paid Ms. Shaver $53,504.79 as payment in full for her share of the marital property. He stated that Ms. Shaver acknowledged receipt of the funds, but demanded an additional $11,000.00 before she would convey the real property to him. Mr. Shaver noted that the decree omitted several assets and debts of the parties that were specifically enumerated in the recital of the settlement agreement at the final divorce hearing. The omitted items included: life insurance with a cash value of $7,623.22; life insurance with a cash value of $5,267.00; a checking account with a value of $1,400.00; and a debt of $250.00.
 {¶ 7} Mr. Shaver argued that an analysis of the total debts and assets of the parties revealed that each party was entitled to receive one-half, or $64,183.79 of the marital assets (excluding Mr. Shaver's boilermaker pension), and that Ms. Shaver was entitled to receive an additional $11,000.00 cash, representing the present value of her interest in his pension plan. Thus, Mr. Shaver asserted that under the terms of the parties' settlement agreement, Ms. Shaver was entitled to receive a total of $75,183.79. Mr. Shaver claimed that Ms. Shaver retained marital property with a value of $21,679.00, and, therefore, with the cash payment of $53,504.79, Ms. Shaver had already received a total of $75,183.79. Thus, Mr. Shaver argued that the provision in the divorce decree requiring him to pay Ms. Shaver $53,504.79 plus an additional payment of $11,000.00 was a clerical error that the court should correct, pursuant to Civ.R. 60(A), to prevent Ms. Shaver from receiving a windfall. Because Mr. Shaver already paid Ms. Shaver the $53,504.79 as required by the decree, he argued that he was entitled to an order requiring Ms. Shaver to convey the marital real property to him by quitclaim deed as ordered in the divorce decree.
 {¶ 8} In contrast, Ms. Shaver argued that Mr. Shaver improperly sought to either modify the parties' divorce decree or set it aside. Specifically, Ms. Shaver asserted the decree of divorce specified that she was entitled to receive a cash payment of $53,504.79 representing her share of the equity in the marital residence plus an additional payment of $11,000 representing her share of Mr. Shaver's pension plan. Because a court speaks only through its journal entries, Ms. Shaver argued that the trial court could not consider anything outside of its decree of divorce to determine whether she was entitled to receive the additional $11,000.00 cash.
 {¶ 9} After reviewing the briefs of the parties and the record, including the transcript of the final divorce hearing, the trial court found that the judgment entry "[did] not accurately reflect the agreement of the parties in that a number of the marital assets and liabilities set forth on the record were omitted from the Judgement Entry Decree of Divorce." The trial court found that the $53,504.79 Mr. Shaver paid to Mrs. Shaver plus the in kind property received by Ms. Shaver satisfied Mr. Shaver's obligation. Specifically, the trial court noted that, at the hearing, Ms. Shaver's counsel stated that Mr. Shaver was to have fifteen days to deliver the balance of the Plaintiff's cash in the amount of $53,504.79. The trial court found that, "Under Ohio Civil Rule 60(A) the Court may correct a mistake at any time and the Court hereby does so." Accordingly, the court ordered Ms. Shaver to immediately execute a quitclaim deed as set forth in the judgment entry decree of divorce.
 {¶ 10} Ms. Shaver timely appeals, raising the following assignment of error: "THE TRIAL COURT ERRED BY MODIFYING THE JUDGMENT ENTRY, DECREE OF DIVORCE PURSUANT TO CIVIL RULE 60(A)."
 II. {¶ 11} In her sole assignment of error, Ms. Shaver contends that the trial court improperly invoked its authority to correct clerical errors pursuant to Civ.R. 60(A) because the trial court's modification constitutes a substantive modification rather than the correction of a clerical mistake. Ms. Shaver first argues that Mr. Shaver could not obtain the relief he sought because he improperly based his motion upon Civ.R. 37, instead of moving the court for an entry and citation in contempt. Then, she argues that because a court of record only speaks through its entries, the trial court cannot modify the decree of divorce to comport with the agreement recited on the record at the final hearing. Thus, she contends that she is entitled to receive $11,000.00 in cash, in addition to the $53,504.79 that she previously received from Mr. Shaver. For the reasons that follow, we disagree.
 {¶ 12} Initially, Ms. Shaver argues that Mr. Shaver should have moved the court to find her in contempt for her failure to convey the real property to him. She correctly notes that Civ.R. 37 pertains to remedies available when a party fails to comply with a discovery request. In essence, Mr. Shaver's motion requests a declaration by the court that he has complied with the terms of the divorce decree regarding the cash settlement as it should have been written, and, therefore, Ms. Shaver's failure to convey the real property is unjustified. In his brief below, Mr. Shaver specifically relied upon Civ.R. 60(A), which provides, in relevant part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." Because Civ.R. 60(A) permits a court to correct a clerical mistake sua sponte, we conclude that Mr. Shaver's error in filing his motion pursuant to Civ.R. 37 is not fatal.
 {¶ 13} Civ. R. 60(A) permits a trial court to modify a judgment if it contains a clerical error, but not a substantive error. State ex rel. Litty v. Leskovyansky (1996),77 Ohio St.3d 97, 100; Londrico v. Delores C. Knowlton, Inc. (1993),88 Ohio App.3d 282, 285; Kuehn v. Kuehn (1988),55 Ohio App.3d 245, 247. "The basic distinction between clerical mistakes that can be corrected under Civ.R. 60(A) and substantive mistakes that cannot be corrected is that the former consists of `blunders in execution' whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." Kuehn at 247, citing Blanton v. Anzalone
(C.A.9, 1987), 813 F.2d 1574, 1577. Thus, a clerical mistake within the purview of Civ.R. 60(A) must be "a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." State ex rel.Litty, at 100.
 {¶ 14} We will not reverse a trial court's decision to grant relief from judgment pursuant to Civ.R. 60(A) absent an abuse of discretion. Strack v. Pelton (1994), 70 Ohio St.3d 172, 174. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard of review, we must not substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135,138. Here, because we find that the record clearly demonstrates that the trial court made an inadvertent mathematical error in the divorce decree when it calculated the cash settlement that Mr. Shaver was to pay Ms. Shaver, we cannot conclude that the trial court abused its discretion in correcting the mathematical error pursuant to Civ.R. 60(A).
 {¶ 15} At the parties' final divorce hearing on June 1, 1998, Ms. Shaver's counsel indicated that the parties had reached an agreement regarding the division of the marital property. Thereafter, counsel recited the agreement on the record, stating that the parties had agreed to the following assets and values which we summarize below:
 Marital Residence $80,000.00 1985 Buick Le Sabre $ 1,000.00 1988 Chevrolet GK1 $ 2,000.00 1995 Buick Riviera $18,000.00 1989 Pontiac 6LE $ 4,500.00 Checking account $ 1,400.00 Life Insurance Policy $ 7,623.22 Life Insurance Policy $ 5,267.00 Household Furniture $ 5,665.00 Cemetery Lots $ 200.00 Ms. Shaver's IRA $12,519.00
TOTAL $138,174.22
Mr. Shaver's Boilermaker Pension $ 55,000.00
TOTAL ASSETS: $193,174.22
 {¶ 16} Counsel also listed the following debts of the parties:
 Ohio Valley Bank (Pontiac Grand Am) $2,271.30 Ohio Valley Bank (Ford F150) $4,146.97 Unspecified Lien $3,028.37 Unspecified Debt $ 112.23 Deductible for daughter's accident $ 250.00
TOTAL DEBTS: $9,808.87
NET ASSETS: $128,365.35 (Excluding Mr. Shaver's Boilermaker Pension)
NET ASSETS: $183,365.35 (Including Mr. Shaver's Boilermaker Pension)
 {¶ 17} Counsel then indicated that "each party for absolutely equal division would receive sixty four thousand one hundred and eighty three dollars and seventy nine cents ($64,183.79) and that is agreed to by the parties." That figure, stated by counsel at the final hearing, represented almost exactly one-half of the parties' net assets, excluding Mr. Shaver's $55,000 pension (i.e. one-half of $128,365.35 would be $64,182.68, or $1.11 less than the amount stated by counsel).
 {¶ 18} Counsel then indicated that Ms. Shaver would retain:
 Her IRA $12,519.00 1989 Pontiac $ 4,500.00 One-half of furniture $ 3,760.00 Cemetery Lots $ 200.00 One-half of checking account $ 700.00
 TOTAL PROPERTY RETAINED BY MS. SHAVER $21,679.00
 {¶ 19} Counsel specified that Mr. Shaver would retain the remainder of the assets, and assume all of the enumerated marital debts. However, with regard to Mr. Shaver's pension plan, counsel indicated that Ms. Shaver had agreed to take a cash settlement of $11,000. Counsel further stated that "[Mr. Shaver] will have fifteen days from today to deliver us the balance of our cash which is $53,504.79." Counsel's statement seems to indicate that the total balance Ms. Shaver expected to receive from Mr. Shaver was $53,504.79.
 {¶ 20} Furthermore, if we add the $21,679.00 value of the assets Ms. Shaver retained, to the $53,504.79 cash payment she received from Mr. Shaver, the total is $75,183.79. That amount is equal to the $64,183.79 figure counsel stated each party would receive for "an absolutely equal division" plus the $11,000.00 payment Ms. Shaver was to receive for her share of Mr. Shaver's pension. Therefore, it is clear from the record that the $53,504.79 cash payment made to Ms. Shaver included the $11,000.00 she was entitled to receive for her share of Mr. Shaver's pension. If the court enforced the divorce decree as it was originally written, Ms. Shaver would receive $86,183.79 in cash and property.
 {¶ 21} Instead of stating the cash settlement as one lump sum, the trial court broke the cash settlement down into two parts, distinguishing the $11,000.00 cash for the pension from Ms. Shaver's portion of the equity in the marital residence. However, in doing so, the court failed to deduct the $11,000.00 from the $53,504.79 total cash payment. Based upon the foregoing, the record plainly reflects that, in order to equalize the division of property, the payment representing Ms. Shaver's equity in the marital residence should have been $42,504.79. Therefore, we cannot find that the trial court abused its discretion in correcting the divorce decree pursuant to Civ.R. 60(A) to reflect that Ms. Shaver was only entitled to receive a total cash payment of $53,504.79. Accordingly, we overrule Ms. Shaver's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that costs herein be taxed to the appellant.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.